OPINION OF THE COURT
Hancock, Jr., J.
Plaintiff, Joseph Dermatossian,[1] recovered a judgment, following a jury verdict, for injuries allegedly sustained on May 5, 1980 when he struck his head on a defective[2] grab handle as he stood up to leave defendant’s bus. Although no proof of actual negligence was adduced, the court, over defendant’s objection, submitted the case to the jury on the theory of res ipso loquitur. The defense was that no accident had occurred on defendant’s bus and that plaintiff must have hurt himself elsewhere. The Appellate Division affirmed, without opinion, and we granted leave to appeal.
 Two questions are presented: (1) whether the court erred in admitting evidence of defendant’s payment of no-fault *222 "first-party benefits”[3] as an admission by defendant that plaintiff sustained injuries on the bus and; (2) whether there was sufficient proof that defendant maintained exclusive control over the grab handle so as to warrant submission of the case to the jury under the theory of res ipso loquitur. For reasons hereinafter stated, we agree with defendant’s contentions on both points. Accordingly, the order should be reversed and the complaint dismissed.
I
THE TRIAL PROCEEDINGS
At the commencement of the trial, in the absence of the jury, plaintiff’s counsel sought permission to prove that defendant had paid $30,000 to $40,000 in no-fault first-party benefits to plaintiff. Defense counsel objected and the court reserved decision. During cross-examination of plaintiff, defense counsel inquired about an entry in an emergency room hospital record for May 10, 1980 when plaintiff received treatment for injuries to the left side of his face. The history of the injury as given by plaintiff to the admitting nurse was: "States fell in street — tripped on hole — onto [left] side of face.” On redirect examination, when plaintiff’s counsel again offered to prove payment of no-fault benefits, the court received the evidence, finding it to be relevant to the issue of whether the accident had occurred on defendant’s bus. Over defendant’s continued objection, the court allowed plaintiff to testify that defendant had paid his medical expenses and part of the earnings plaintiff claimed to have lost as a result of the May 5, 1980 accident. In admitting the evidence, the court told the jury to consider defendant’s payment of benefits as bearing only on whether the accident occurred on the bus — not whether defendant was legally responsible for the injuries.[4] *223 To corroborate its position that plaintiff had not been injured on the bus and had sustained the injuries in some other manner, defendant proved that plaintiff never reported the accident to the bus driver or other employee, and that its first knowledge of the accident was on June 6, 1980 when it received plaintiff’s notice of claim. During the colloquy concerning admission of the payment of no-fault benefits, defendant argued that payment was irrelevant and could not constitute an admission since the benefits were paid prior to the discovery of the history given by plaintiff in the May 10, 1980 hospital record.
II
ADMISSIBILITY OF PAYMENT OF NO-FAULT BENEFITS
Evidence, albeit logically and technically relevant, is not necessarily admissible. It will be excluded "if it is too slight, remote, or conjectural to have any legitimate influence in determining the fact in issue” (Richardson, Evidence § 147 [Prince 10th ed]; see, 21 NY Jur, Evidence, § 161). The claimed basis for admitting proof that no-fault benefits were paid here was that it was probative of a critical fact in issue — the fact on which defendant’s liability depended — that plaintiff was injured on the bus. The evidence was offered and received on the theory that it constituted an admission by conduct that plaintiff was hurt on the bus because presumably defendant would not have made payment if it were not so. The proof should have been excluded. The payment of no-fault benefits, in response to plaintiff’s facially valid sworn claim that he had been hurt on the bus, proved nothing more than that, at the time of payment, defendant had determined that there was no valid basis for challenging the truth of plaintiff’s assertions (11 NYCRR 65.11 [k] [3]) and, thereby, avoiding its statutory obligation to pay first-party benefits promptly after loss is incurred. (Insurance Law § 5106 [a].) Plaintiff’s argument to the contrary is based on a misconception of an insurer’s obligations under the No-Fault Law and, particularly, when and how an insurer must pay first-party benefits to a "covered person”.
*224 By statute, an insurer, or self-insurer as in the instant case, is liable for the payment of first-party benefits to persons "for loss arising out of the use or operation” of a motor vehicle (Insurance Law § 5103 [a] [1]). Payment of first-party benefits must be made "as the loss is incurred” and such benefits are overdue if not paid within 30 days after the claimant supplies proof of the fact and amount of loss sustained (Insurance Law § 5106 [a]). Any overdue payment bears interest at a rate of 2% per month, and an insurer is liable for the attorney’s fees incurred by the insured in securing payment of a valid overdue claim (Insurance Law § 5106 [a]; 11 NYCRR 65.15 [g], [h]).
Under the regulations promulgated by the Insurance Department, insurers must adhere to the following guidelines in processing claims:
"(1) Have as your basic goal the prompt and fair payment to all automobile accident victims.
"(2) Assist the applicant in the processing of a claim. Do not treat the applicant as an adversary.
"(3) Do not demand verification of facts unless there are good reasons to do so. When verification of facts is necessary, it should be done as expeditiously as possible.
"(4) Hasten the processing of a claim through the use of a telephone whenever it is possible to do so.
"(5) Clearly inform the applicant of the insurer’s position regarding any disputed matter.
"(6) Respond promptly, when a response is indicated, to all communications from insured’s, applicants, attorneys and any other interested persons” (11 NYCRR 65.15 [a]).
It is readily apparent that in the usual case, like the one here, where a self-insurer has no reason to deny the no-fault claim at the time payment is due, the fact of payment cannot in any sense be taken as a concession that the claim is legitimate. Insurers are admonished not to "treat the applicant as an adversary” and not to "demand verification of facts unless there are good reasons to do so.” Consequently, benefits are paid with only limited opportunity to investigate a claim. A claimant to receive payment need only file a "proof of claim” (11 NYCRR 65.11 [k] [3]), and the insurers are obliged to honor it promptly or suffer the statutory penalties. Thus, under the circumstances here, the probative value, if any, of the payment of first-party benefits was so slight and conjectural that it should not have been admitted.
There are, moreover, compelling reasons of policy support *225 ing our holding that the proof that benefits were paid should have been excluded. A rule permitting the use of such evidence against insureds would work against the primary purpose underlying the No-Fault Law — to assure claimants of expeditious compensation for their injuries through prompt payment of first-party benefits without regard to fault and without expense to them (see, Memorandum of State Executive Dept, 1977 McKinney’s Session Laws of NY, at 2448, 2450; see also, Licari v Elliott, 57 NY2d 230, 237). To implement this legislative aim of curtailing delay and reducing expense in the adjustment of motor vehicle accident claims, the regulations (see, 11 NYCRR 65.15) are written to encourage prompt payment of claims, to discourage investigation by insurers, and to penalize delays. Permitting evidence in a personal injury lawsuit of the fact that the defendant (if self-insured) or its insurer had paid the plaintiff the statutorily obligated first-party benefits would unquestionably frustrate the very purpose of the No-Fault Law by discouraging insurers from making prompt and voluntary payment of claims. We hold, therefore, that proof of defendant’s payment of no-fault benefits to plaintiff was also inadmissible for reasons of policy.
Invoking policy reasons to exclude the proof here finds ample legal precedent in analogous situations (see, e.g., Smith v Satterlee, 130 NY 677 [holding that an offer to compromise or settle a pending controversy is not an admission of fact]; Getty v Town of Hamlin, 127 NY 636 [excluding evidence of repairs made after an accident as an admission of negligence]; Grogan v Dooley, 211 NY 30 [holding offer to pay medical bills inadmissible, since such an offer might be construed as a voluntary act of benevolence, not inconsistent with a claim of freedom from negligence]; see also, Cover v Cohen, 61 NY2d 261, 270; Caprara v Chrysler Corp., 52 NY2d 114, 122-125; see generally, Richardson, Evidence §§ 148, 225 [Prince 10th ed]; 2 Wigmore, Evidence § 283; 4 Wigmore § 1061 [3d ed]).
Moreover, as defendant correctly notes, if an insurer’s conduct in paying a no-fault claim could be deemed an admission in the claimant’s subsequent action for damages, an insurer would have to choose between two courses of action, both potentially harmful: either pay the no-fault claim and risk having the fact of payment held against it later as a concession on some point in issue such as the extent of the injury, or its causal connection to the accident — or dispute the claim and subject itself to the arbitration process with attendant expense *226 and delay and the risk of being bound by any adverse arbitral ruling in a subsequent personal injury lawsuit (see, Matter of American Ins. Co. [Messinger — Aetna Cas. & Sur. Co], 43 NY2d 184; Altman v Queens Tr. Corp., 94 Misc 2d 549; cf. Baldwin v Brooks, 83 AD2d 85). In sum, strong policy considerations militate against permitting proof of a claimant’s receipt of first-party benefits for an injury covered by no-fault insurance as bearing on a material point in issue in the ensuing lawsuit to recover damages for those injuries.
Ill
SUBMISSION OF THE CASE UNDER RES IPSA LOQUITUR
The doctrine res ipso loquitur represents an application of the ordinary rules pertaining to circumstantial evidence in negligence cases stemming from accidents having particular characteristics. When the doctrine is invoked, an inference of negligence may be drawn solely from the happening of the accident upon the theory that "certain occurrences contain within themselves a sufficient basis for an inference of negligence” (Foltis, Inc. v City of New York, 287 NY 108, 116; see, Richardson, Evidence § 93, at 68 [Prince 10th ed]). The rule simply recognizes what we know from our everyday experience: that some accidents by their very nature would ordinarily not happen without negligence (see, e.g., Dittinger v Isal Realty Corp., 290 NY 492; Griffin v Manice, 166 NY 188). Res ipso loquitur does not create a presumption in favor of the plaintiff but merely permits the inference of negligence to be drawn from the circumstance of the occurrence. (Richardson, Evidence § 93, at 69 [Prince 10th ed]). The rule has the effect of creating a prima facie case of negligence sufficient for submission to the jury, and the jury may — but is not required to — draw the permissible inference (see, Foltis, Inc. v City of New York, supra, at pp 115-120).
In New York it is the general rule that submission of the case on the theory of res ipso loquitur is warranted only when the plaintiff can establish the following elements: " '(1) the event must be of a kind which ordinarily does not occur in the absence of someone’s negligence; (2) it must be caused by an agency or instrumentality within the exclusive control of the defendant; (3) it must not have been due to any voluntary action or contribution on the part of the plaintiff ” (Corcoran v Banner Super Market, 19 NY2d 425, 430, mod on remittitur 21 NY2d 793 [quoting from Prosser, Torts § 39, at 218 (3d *227 ed)]).[5] Only when these essential elements have been established, after the plaintiff has first demonstrated the nature of the instrumentality which caused the injury and its connection with the defendant (see, Manley v New York Tel. Co., 303 NY 18), does a prima facie case of negligence exist (see, Weeden v Armor Elevator Co., 97 AD2d 197, 203; Fogal v Genesee Hosp., 41 AD2d 468, 476).
It is the second of the required three elements — exclusive control — which is critical here.[6] Courts do not "generally apply this requirement as it is literally stated” (2 Harper and James, Torts § 19.7, at 1086) or as a fixed, mechanical or rigid rule (Prosser and Keeton, Torts § 39, at 250 [5th ed]; see, Corcoran v Banner Super Market, 19 NY2d 425, 431-432, supra; Payless Discount Centers v 25-29 N. Broadway Corp., 83 AD2d 960, 961). For example, res ipso loquitur has been applied even though the accident occurred after the instrumentality left the defendant’s control, where it was shown that the defendant had exclusive control at the time of the alleged act of negligence (see, Prosser and Keeton, op. cit. § 39, at 250; Zentz v Coca Cola Bottling Co., 39 Cal 2d 436, 247 P2d 344; see also, Hyams v King Kullen Grocery Co., 20 AD2d 657; Day v Grand Union Co., 280 App Div 253, affd 304 NY 821).
The exclusive control requirement, as generally understood, is that the evidence "must afford a rational basis for concluding that the cause of the accident was probably 'such that the defendant would be responsible for any negligence connected with it.’ ” (2 Harper and James, Torts § 19.7, at 1086, quoting Prosser, Res Ipsa Loquitur in California, 37 Cal L Rev 183, 201 [1949].) The purpose is simply to eliminate within reason all explanations for the injury other than the defendant’s negligence (see, Prosser and Keeton, Torts § 39, at 248-251 [5th ed]; see, e.g., Zentz v Coca Cola Bottling Co., 39 Cal 2d 436, 247 P2d 344, supra). The requirement does not mean that "the possibility of other causes must be altogether eliminated, but only that their likelihood must be so reduced that the greater probability lies at defendant’s door.” (2 Harper and James, Torts § 19.7, at 1086). Thus, in a case involving the break of a *228 water main, we held that a municipality ordinarily has sufficient control over the mains under its streets to permit application of res ipso loquitur (see, Foltis, Inc. v City of New York, supra); but that control is insufficient where the proof does not eliminate the activities of a third party having access to a main as a possible cause of its break (see, De Witt Props. v City of New York, 44 NY2d 417; compare also, Griffin v Manice, supra, with Feblot v New York Times Co., 32 NY2d 486).
Turning to the case here, we conclude that plaintiff did not establish control of the grab handle by defendant of sufficient exclusivity to fairly rule out the chance that the defect in the handle was caused by some agency other than defendant’s negligence. The proof did not adequately exclude the chance that the handle had been damaged by one or more of defendant’s passengers who were invited to use it. It is this crucial fact — that the grab handle was continuously available for use by defendant’s passengers — which distinguishes the case at bar from Bressler v New York R. T. Corp. (277 NY 200), cited by plaintiff, where it could not be shown that the subway train window which caused the injury was used or under the control of someone other than the defendant.
The order should be reversed and the complaint dismissed.
Chief Judge Wachtler and Judges Meyer, Simons, Kaye, Alexander and Titone concur.
Order reversed, with costs, and complaint dismissed.

. Hereafter, "plaintiff” refers only to the physically injured party, Joseph Dermatossian. The action of his wife, Nelly Dermatossian, is purely derivative in nature and, therefore, is treated as one with Joseph’s action.

. The grab handle, according to plaintiff, projected straight down from the ceiling of the bus instead of at the customary angle of about 45 degrees.

. First-party benefits are defined as "payments to reimburse a person for basic economic loss on account of personal injury arising out of the use or operation of a motor vehicle” (Insurance Law § 5102 [b]). Plaintiff, if injured on defendant’s bus, would be a "covered person” and as such entitled to first-party benefits (Insurance Law § 5102 [b]).

. In its charge to the jury, the court stated with respect to the payment of first-party benefits: "As I explained to you during the trial, you are to consider this evidence only on the issue of whether Mr. Dermatossian’s injuries resulted from an accident on one of defendant’s buses and not whether the Transit Authority was responsible for negligence in connection with the alleged accident. You will recall my instructions during trial that defendant was not legally obligated to make these payments if the accident *223 did not occur on one of his buses. If you find defendant made such payments you may consider this as some evidence, that Mr. Dermatossian’s injuries did occur on one of defendant’s buses. This type of evidence is legally called an admission by conduct.”

. It has been suggested that the advent of comparative fault logically eliminates the third requirement, since comparative fault, by its nature, converts the plaintiffs contributing fault from its traditional function of barring liability into one of merely reducing damages (see, Prosser and Keeton, Torts § 39, at 254 [5th ed]). We express no view on this question.

. Our disposition of the res ipso loquitur issue on this element obviates any consideration of either of the other two.