OPINION OF THE COURT
Memorandum.
The order of the Appellate Division, insofar as appealed from, should be reversed, with costs, and a new trial granted.
Plaintiff — a securities clerk employed in downtown Manhattan — left for work on a rainy morning in March 1980, wearing a pair of soft rubber overshoes. Upon leaving the subway train at the Bowling Green Station, and in order to reach the street, he stepped onto an escalator owned, operated and maintained by defendant, the New York City Transit Authority. As the escalator ascended, plaintiff heard a rumbling sound and felt the step on which he stood vibrating. Somewhere between the bottom landing and the midpoint, his left foot had become caught in a gap between the escalator step and sidewall; he then looked down and noticed the gap, which he estimated was "a couple of inches.” Frightened and unable to dislodge his foot, plaintiff rode the escalator to the top, where he was thrown onto his left hip, suffering a fractured hip and related injuries.
In this action to recover for damages against the Transit Authority, plaintiff alleged that his injuries were the result of defendant’s negligent operation and maintenance of the escalator. At trial, in addition to plaintiff’s own testimony, an engineer testified that the clearance between the escalator steps and sidewalls must have exceeded the City’s building code and industry standards of three eighths of an inch, "otherwise the shoe couldn’t have gotten into that space.” In addition, the engineer said, the rumbling could not have happened "unless there was some defect in the driving apparatus of the escalator” and that this "could not happen if the escalator had been kept in the state of proper maintenance.” For defendant, a Transit Authority maintenance supervisor testified that some clearance between the escalator steps and sidewalls — up to one-quarter inch — is necessary to permit the steps to move freely. A two-inch gap could occur, he asserted, only "if somebody got something caught in it like a hand truck”. It could not happen through normal use; "it would have to be an act of vandalism.” Defendant further established that the escalator was maintained and inspected on three occasions during the week before the accident. Inspection of the escalator immediately after the accident revealed no gap.
*623 Over defendant’s objection, the court charged the doctrine of res ipsa loquitur, instructing the jury that if it found that "there was a gap into which his shoe or foot became lodged * * * in the manner that he said, you may infer the defendant negligently maintained the escalator in question.” The jury returned a verdict of $100,000, apportioning the fault at 25% against plaintiff and 75% against defendant. The Appellate Division reversed and remanded for a new trial on the issue of damages, and otherwise affirmed the judgment, certifying to us the question whether its order was properly made. We now conclude that it was not, and answer the certified question in the negative.
Submission of a case on the theory of res ipsa loquitur is warranted only when the plaintiff can establish three elements: "(1) the event must be of a kind which ordinarily does not occur in the absence of someone’s negligence; (2) it must be caused by an agency or instrumentality within the exclusive control of the defendant; (3) it must not have been due to any voluntary action or contribution on the part of the plaintiff.” (Prosser, Torts § 39, at 218 [3d ed]; see, Dermatossian v New York City Tr. Auth., 67 NY2d 219, 226.) As in Dermatossian, the second requirement — exclusive control — is critically lacking here.* The proof did not adequately refute the possibility that the escalator — located in a subway station used by approximately 10,000 persons weekly — had been damaged by a member of the public either through an act of vandalism or, as defendant’s witness suggested, by permitting an object such as a hand truck to become caught in the space between the step and sidewall. Plaintiff did not establish that the likelihood of such occurrences was so reduced " 'that the greater probability lies at defendant’s door.’ ” (Id., at 227, citing 2 Harper and James, Torts § 19.7, at 1086.) We reject plaintiff’s contention that, in the circumstances, there is any meaningful distinction to be drawn between the grab handle of a City bus (in issue in Dermatossian) and the escalator steps of a City subway station. In both instances of extensive public contact, plaintiff failed to establish control by defendant "of sufficient exclusivity to fairly rule out the chance that [the defects were] caused by some agency other than defendant’s negligence.” (Dermatossian v New York City Tr. Auth., 67 NY2d 219, 228, supra.)
*624 While res ipsa loquitur was improperly charged to the jury and the judgment must be set aside, there is proof of negligence in the record. A new trial is therefore warranted.
Chief Judge Wachtler and Judges Simons, Kaye, Alexander, Titone, Hancock, Jr., and Bellacos a concur.
Order, insofar as appealed from, reversed, with costs, a new trial granted, and certified question answered in the negative in a memorandum.

 We thus do not consider defendant’s additional contentions that neither of the remaining two elements is satisfied.