Alan GOODMAN and Barbara Weiser, Plaintiffs,

v.

The UNITED STATES of America, Defendant.

No. 93 Civ. 1849.

United States District Court, S.D. New York.

March 2, 1996.

Zalman & Schnurman by Ava R. Maynard, New York City, for Plaintiffs.

Mary Jo White, United States Attorney, Southern District of New York by Jennifer K. Brown, Assistant United States Attorney, New York City, for U.S.

CEDARBAUM, District Judge.

This is an action against the United States of America under the Federal Tort Claims Act. Alan Goodman and Barbara Weiser sue for damages allegedly suffered because Goodman tripped and fell over a crowd control barrier at Castle Clinton National Monument, which is owned by defendant. Plaintiffs contend that Goodman's fall was caused by defendant's negligence "in having [the] barrier improperly placed" at the exit of the monument. (Compl. ¶ 8.)

To establish a prima facie case of negligence under New York law, which governs plaintiffs' claim, plaintiffs must prove either that defendant created a dangerous condition or that defendant had actual or constructive notice of a dangerous condition. *Eddy v. Tops Friendly Markets*, 59 N.Y.2d 692, 463 N.Y.S.2d 437, 450 N.E.2d 243 *aff'g on opinion below* 91 A.D.2d 1203, 459 N.Y.S.2d 196 (4th Dep't 1983). Defendant moves for summary judgment on the ground that there is a complete failure of proof with respect to this essential element of plaintiffs' claim, and that therefore, defendant is entitled to judgment as a matter of law. For the reasons that follow, the motion is granted.

*Undisputed Facts*

Plaintiffs and defendant both rely on the deposition testimony of Thomas Edward O'Connell, who was site manager of Castle Clinton National Monument on the date of

Goodman's injury. (O'Connell Dep. at 5.) O'Connell testified that approximately three million people visit Castle Clinton each year. (*Id.* at 7.) According to O'Connell, defendant used crowd control barriers that measured approximately four and a half feet in length and three feet in height, (*id.* at 23), and weighed approximately forty pounds, (*id.* at 24), to contain crowds at the monument. O'Connell testified that several barriers would be placed on the side of the building, and two additional barriers would be located at the exit "flush up against the building, on the back door, out of the doorway, against the building." (*Id.* at 20, 38.) O'Connell testified in addition that each barrier at the exit was "supposed to be straight," but if there was not a crowd, "one could be angled. It doesn't really matter." (*Id.* at 25–26.)

O'Connell and his staff would inspect the site before it opened for public visitors each day. O'Connell testified "we had to, basically, put these barricades back together every morning." (*Id.* at 24.) In response to plaintiffs' counsel's question, "What do you mean 'put the barricades back together?' ", O'Connell explained, "They were moved constantly, overnight," and stated "I would definitely have help. I wouldn't do it myself." (*Id.*) In addition, rangers would patrol the area on "non-busy" days approximately every half hour. (*Id.* at 27.) O'Connell testified that "if a barricade is moved, it's normal practice to put it back." (*Id.* at 26–27.) O'Connell testified that he did not recall any accidents other than Goodman's in connection with the crowd control barriers. (*Id.* at 39.)

## Discussion

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). To defeat a motion for summary judgment by the party that does not bear the burden of proof, the party with the burden of proof must make a showing sufficient to establish the existence of every element essential to that party's claim. *Celotex Corp. v. Catrett,*

477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). When the party with the burden of proof fails to make such a showing, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323, 106 S.Ct. at 2552.

Plaintiffs argue that O'Connell's testimony supplies sufficient evidence from which a reasonable inference can be drawn that defendant either created the dangerous condition of an improperly placed crowd control barrier or had actual or constructive notice of that condition.

### 1. Creation of a Dangerous Condition

■ Assuming that the barrier was improperly located in the walkway, O'Connell's testimony is not sufficient evidence from which a fact finder could infer that an employee of defendant put it there. Plaintiffs have presented no specific facts showing that an employee of defendant placed this barrier where Goodman tripped over it. Plaintiffs argue that because defendant was "in charge of" the barriers generally, a logical inference can be drawn that an employee of defendant caused the offending barrier to be located in a place where it created a danger. The cases cited by defendant make clear, however, that to defeat a motion for summary judgment, plaintiffs must demonstrate more than defendant's responsibility in general for the placement of the barriers. In *Melton v. E.P.S. Hair Design, Inc.,* for example, the plaintiff sued after she tripped over the footrest of a chair in the defendant's beauty salon. The Appellate Division, Second Department granted summary judgment to the defendant. Although the defendant was responsible for the chair in a general sense, the court found that the plaintiff presented no evidence that the defendant had created the dangerous condition by turning the chair so that the footrest faced the aisle. *Melton v. E.P.S. Hair Design, Inc.,* 202 A.D.2d 649, 610 N.Y.S.2d 53 (2d Dep't 1994).

*Padula v. Big V Supermarkets, Inc.,* 173 A.D.2d 1094, 570 N.Y.S.2d 850 (3d Dep't 1991), on which plaintiffs rely, is not to the

contrary. In *Padula*, the plaintiff slipped and fell on a wet floor in the defendant's supermarket. The plaintiff showed that the defendant stored shopping carts outside where they could become wet from snow and rain, and that the defendant made no arrangement for drying the carts before customers brought them into the store. The Appellate Division, Third Department held that the trial court properly charged the jury that it could find that the defendant created the dangerous condition. The court emphasized that there were "affirmative acts" by the defendant that created the condition. The court noted specifically that the defendant stored the carts outdoors "by design" where they got wet "without any arrangement or provision for drying prior to indoor use." Also, the defendant "specifically permitted customers to take the store-provided carts outside and into the parking lot in inclement weather, again without arrangement for drying prior to reuse inside the store." *Id.* at 1096, 570 N.Y.S.2d at 851–52.

It was obvious in *Padula* that the use of dripping wet shopping carts in a supermarket was likely to cause the floor to become wet and slippery, a dangerous condition. Goodman and Weiser have not proffered any evidence that the use of movable crowd control barriers has any similar tendency. In fact, O'Connell testified that he was aware of no injury other than Goodman's resulting from the crowd control barriers at Castle Clinton. Plaintiffs have not shown that defendant engaged in any affirmative acts that were likely to cause a barrier to be located in the walkway. Thus, plaintiffs are really arguing that the use of movable crowd control barriers is itself the creation of a dangerous condition.

 Plaintiffs' position comes very close to the doctrine of res ipsa loquitur, under which "an inference of negligence may be drawn solely from the happening of the accident upon the theory that 'certain occurrences contain within themselves a sufficient basis for an inference of negligence.'" *Dermatossian v. New York City Transit Auth.*, 67 N.Y.2d 219, 226, 501 N.Y.S.2d 784, 788, 492 N.E.2d 1200, 1204 (1986) (quoting *George Foltis, Inc. v. City of New York*, 287 N.Y.

108, 116, 38 N.E.2d 455 (1941)). Res ipsa loquitur applies, however, only when the instrumentality that caused the injury was within the exclusive control of the defendant. *Id.*, 501 N.Y.S.2d at 788, 492 N.E.2d at 1204. The barrier that allegedly caused Goodman's fall was in a location traversed by the public. Plaintiffs have not put forward any evidence that moving the barrier required special equipment or strength; O'Connell's testimony that the barrier weighed approximately forty pounds is not sufficient to establish that the barrier could not easily be moved. Plaintiffs have proffered no evidence from which a reasonable inference could be drawn that any particular person moved the barrier. Thus, it cannot reasonably be inferred that any person who moved the barrier was employed by defendant. Because plaintiffs have not made any showing that the barrier was in defendant's exclusive control, res ipsa loquitur is not appropriate here. And because plaintiffs also have not presented any evidence showing that defendant caused the barrier to be located improperly, they have not demonstrated that there is a genuine issue of material fact as to whether defendant created a dangerous condition. Without speculation, that question cannot be answered "yes."

### 2. *Notice*

 Nor have plaintiffs established that defendant had actual or constructive notice of the condition. There is no evidence that defendant had actual notice that the barrier had been placed in the walkway. "To constitute constructive notice, a defect must be visible and apparent and it must exist for a sufficient length of time prior to the accident to permit defendant's employees to discover and remedy it." *Gordon v. American Museum of Natural History*, 67 N.Y.2d 836, 837, 501 N.Y.S.2d 646, 647, 492 N.E.2d 774, 775 (1986) (citations omitted). There is no evidence regarding how long the barrier had been located in the walkway before Goodman's accident. The fact that the barrier weighed approximately forty pounds does not indicate that "it is likely it had been there for some time," as plaintiffs contend, (Pl.Mem. at 10–11).

366

Plaintiffs can establish constructive notice without proving the length of time that elapsed while the barrier was located in the walkway by putting forth evidence of a recurrent dangerous condition. "When a landowner has actual knowledge of the tendency of a particular dangerous condition to reoccur, he is charged with constructive notice of each specific reoccurrence of that condition." *Weisenthal v. Pickman,* 153 A.D.2d 849, 851, 545 N.Y.S.2d 369, 371 (2d Dep't 1989) (citations omitted); *Alvarez v. Mendik Realty Plaza, Inc.,* 176 A.D.2d 557, 575 N.Y.S.2d 25 (1st Dep't 1991), *leave to appeal denied,* 79 N.Y.2d 756, 583 N.Y.S.2d 191, 592 N.E.2d 799 (1992). Plaintiffs point to O'Connell's testimony that the barriers "were moved constantly, overnight," that there was a "normal practice" of putting back barriers that were found during the day to have been moved, and that the barriers "could be angled." According to plaintiffs, these facts establish a recurrent dangerous condition. But this testimony is too vague to satisfy plaintiffs' burden. O'Connell's testimony that barriers were moved is not evidence that the two barriers near the exit were moved into the walkway or to any other place where they became dangerous. Plaintiffs do not demonstrate that the barriers were repeatedly "angled" so that they protruded into the walkway or were otherwise hazardous. There is no evidence that any barrier had ever been in the walkway prior to Goodman's accident. Plaintiffs have failed to put forth sufficient evidence to show a genuine issue of fact as to whether there was a recurrent dangerous condition.

### Conclusion

For the foregoing reasons, defendant's motion for summary judgment is granted.

SO ORDERED.