OPINION OF THE COURT
John P. Lane, J.
This claim, which was filed December 29, 1995, seeks damages of $15,180.54 for property destroyed in a fire in claimant’s cell at Wende Correctional Facility on October 25, 1995. Although defendant’s answer had raised a jurisdictional affirmative defense based on failure to file the claim timely and *425 properly, the jurisdictional defense was withdrawn at the commencement of trial.
Claimant testified that he left his cell shortly before 2:30 p.m. to carry out his duties as a block clerk, which involved going to the second floor of the building in which he was housed to post notices on a bulletin board. He had been gone about 15 or 20 minutes when a correction officer came and told him about the fire, but he had been able to smell the smoke before that point. Claimant was subsequently questioned about the incident by a sergeant, but responded that he did not know what had happened. He was assigned to another block and never permitted to return to his cell.
Claimant further testified that when he left the floor, Correction Officer (C.O.) Wright, the hall captain, was stationed at a desk at the end of the gallery that provided him with a clear view of the gallery. He also stated that the rover, C.O. Dougherty, was in the same general area when he left the floor. Claimant believed his cell door was locked when he left it. He also stated that there was a recreation yard callout shortly after he left the floor. According to claimant, there were no cleaning or lighter fluids in his cell; he had not been threatened; and he had never been assaulted by another inmate before the fire. Claimant had been transferred to Wende from Attica Correctional Facility on January 19, 1995. He denied setting the cell on fire himself, and also testified that he had not requested a transfer from Wende.
Correction Officer Francis Dougherty testified claimant’s cell was locked when he left it. He also stated that the view of the cells from the hall captain’s desk would be obscured by the lockbox. He testified that he let the inmates out for the afternoon recreation yard call and then toured the area to verify that only those inmates who had requested the yard had left. As he was making his final tour of the shift, about 2:40 p.m., he noticed smoke coming from the gallery. He reported it to the hall captain, who sounded an alarm. The area was secured, and other officers fought the fire, which was out of control.
C.O. Robert Raichel, who was the fire and safety officer, testified that he inspected the cell afterwards and took the photographs marked into evidence as exhibits 1 through 8. He testified that he found no evidence of any accelerant or device that started the fire. He concluded that the fire had started in a box of clothes under the bed, but was unable to determine how it had started.
*426 The court also heard testimony from Sergeant Lawrence Higley, who supervised the fire investigation, and whose report was admitted into evidence as exhibit 9. The report states that inmate Miceli reported his cell to have been locked when he left, and Sergeant Higley concluded that it would have been impossible for anyone to get at the box of clothes under the bed.
Exhibit 13 was the inventory form 2064 prepared in conjunction with claimant’s transfer from Attica, and exhibit 14 was the form 2064 prepared the day of the fire. Claimant signed the latter form, but testified that he had not been present at the time of the packup and had not checked the list of items before he signed it. Exhibit 10 is a memorandum from C.O. Case to Captain Skinner regarding the fire, to which is attached a list of property lost in the fire that claimant acknowledged and signed the day of the fire. This list includes the items contained on claimant’s inmate claim form (exhibit A) prepared October 26, 1995 and three photo albums. According to claimant, the missing photographs were of family members, some of them deceased, and represented the greatest part of his loss, although he could place no specific value on them. (Item 24 of the claim refers to a book diary with assorted photographs of sentimental value estimated to be worth $2,500; and item 29 refers to 400 photographs with sentimental value estimated to be worth $5 each or $2,000.) The claim filed with the court mentions additional items, and claimant could explain the discrepancy only by stating that he recalled other missing items later after preparing the initial list with Officer Case.
Defense witness C.O. James Case testified that he was the recreation escort on October 25th, and that he packed up claimant’s cell the day of the fire so that his loss could be documented. His testimony contradicted claimant’s in that he stated claimant was present for at least part of the packing up process. According to Officer Case, exhibit 14, prepared the day of the fire, lists the items taken from the cell that had not been destroyed by the fire. He was unable to say, however, whether the list included items that had been damaged in any way.
In the court’s opinion, claimant testified plausibly and credibly about the events of the day. There was no indication that he had stored any combustible materials in his cell or was otherwise responsible for the fire. Further, although the court credits Officer Raichel’s testimony that the fire began in a box of clothes under the bed, Officer Raichel was unable to say *427 precisely how the fire started and the court is unconvinced that it was the result of spontaneous combustion of the clothes. Rather, the most likely explanation is that it was the work of an arsonist who either gained unauthorized entry onto the gallery or who was housed on the gallery and managed to ignite the fire while Officer Dougherty was gathering the inmates who were headed for the recreation yard.
Where the actual or specific cause of an accident is unknown, under the doctrine of res ipsa loquitur, negligence may be inferred in certain circumstances merely from the happening of an event and the defendant’s relation to it. (Kambat v St. Francis Hosp., 89 NY2d 489, 494.) This is an appropriate case for application of the doctrine of res ipsa loquitur. Claimant’s failure to plead res ipsa does not constitute a bar to invocation of the doctrine where, as here, the facts warrant its application. (Weeden v Armor El. Co., 97 AD2d 197, 201-202.) The doctrine of res ipsa loquitur “simply recognizes what we know from our everyday experience: that some accidents by their very nature would ordinarily not happen without negligence * * * Res ipsa loquitur does not create a presumption in favor of the plaintiff but merely «permits the inference of negligence to be drawn from the circumstance of the occurrence * * * The rule has the effect of creating a prima facie case of negligence sufficient for submission to the jury, and the jury may — but is not required to — draw the permissible inference”. (Dermatossian v New York City Tr. Auth., 67 NY2d 219, 226.) The opinion in Dermatossian (67 NY2d, at 226) restated the general rule in this State that res ipsa may be invoked only when the plaintiff can establish the following elements: “ ‘ “(1) the event must be of a kind which ordinarily does not occur in the absence of someone’s negligence; (2) it must be caused by an agency or instrumentality within the exclusive control of the defendant; (3) it must not have been due to any voluntary action or contribution on the part of the plaintiff” ’ (Corcoran v Banner Super Mkt., 19 NY2d 425, 430, mod on remittitur 21 NY2d 793 [quoting from Prosser, Torts § 39, at 218 (3d ed)]).”
In this case, claimant has established to the court’s satisfaction that he had nothing to do with the fire. In a maximum security facility such as Wende, access to an inmate’s cell is, or should be, limited to authorized facility personnel and to a relatively few other inmates, such as feed-up porters whose duty it is to bring meal trays to keeplock inmates. Further, groups of inmates in such a facility are escorted by an officer as they travel from one location to another. Thus, the area of *428 the fire can be said to be within defendant’s exclusive control. Further, if one rules out such typical incendiary causes as faulty wiring or electrical appliances, or storage of accelerants, which Officer Raichel apparently did, one is left only with spontaneous combustion, which the court has ruled out here as a matter of common sense, and arson. In this case, moreover, the initial incendiary act remained undetected for some minutes while the fire smoldered in claimant’s cell and eventually created enough smoke to result in the hospitalization of several other inmates on the gallery.
The court finds that this arson is chargeable to the State both because it should not have occurred in the first place and because the fire, once begun, should have been detected and dealt with immediately. The area around claimant’s cell was, or should have been within the exclusive control of defendant’s employees, and the diligent exercise of supervision over the inmates in the area should have prevented the initial incendiary act from occurring, or at least have resulted in a prompt response before the fire raged out of control. The court can certainly envision circumstances under which a would-be arsonist might take a vigilant officer by surprise and start a blaze by hurling an incendiary material into a cell. Here, however, it appears that the arsonist did his work and walked away completely undetected. Under the circumstances, the court finds that the doctrine of res ipsa loquitur is properly invoked in this case and that an inference of negligence can and should be drawn therefrom.
With respect to damages, the court finds claimant’s proof persuasive regarding those items listed on the inmate claim form (exhibit A) and the list appended to the memorandum about the fire written by Officer Case (exhibit 10), but not with respect to the additional items listed on his claim. Claimant’s only explanation for the discrepancies was that he later realized additional items were missing. This explanation is insufficient in light of Officer Case’s memorandum and efforts to document the losses immediately after the fire. The items mentioned in the claim but not in the exhibits include the following:
Item 32 — legal papers accumulated over 10 years representing 500 hours of work, which claimant valued at $5 per hour for a total of $2,500; items 45 and 48 — briefs and books, including 2,000 pages of transcripts totaling $4,850. (Claimant testified that he received replacement copies of some transcripts and legal papers from the court and attorneys, but he did not specify which items, how many pages, or how much the replacements cost him.)
*429 The court having adopted claimant’s estimate of applicable depreciation, claimant will be awarded damages for the following items, which were set forth on exhibit A, in the amounts listed next to them:
(1) six nylon boxer shorts $ 28.50
(2) four nylon tee shirts 19.00
(3) five athletic tee shirts 7.64
(4) seven colored tee shirts 62.25
(5) six v-neck tee shirts 11.60
(6) four pairs sweat pants 52.90
(7) one set pajamas 22.40
(8) two sweat shirts (red) 31.45
(9) one sweat shirt (burgundy) 6.00
(10) one long-sleeve shirt 14.40
(11) four short-sleeve shirts 64.00
(12) one pair shorts 9.50
(13) two pair sneakers 36.80
(14) no item listed
(15) one super vellux blanket 32.00
(16) one army field jacket 32.00
(17) one mirror 3.00
(18) two buckets 4.00
(19) two long john tops 6.80
(20) two long john bottoms 6.80
SUBTOTAL $451.44
In addition, claimant is entitled to damages for the following items listed on exhibit 10 in the amounts set forth below:
(1) three photo albums @ $25.00 and 400 photographs @ $1.00 $475.00
(2) one rain poncho 4.00
(3) one pajama bottom 20.00
(4) one towel 5.00
(5) one book 25.00
(6) two net bags 8.00
SUBTOTAL $537.00
TOTAL $988.44
In accord with the above, claimant is hereby awarded the sum of $988.44, with interest from October 25, 1995.