Doherty v 730 Fifth Upper, LLC (2023 NY Slip Op 06474)

Doherty v 730 Fifth Upper, LLC

2023 NY Slip Op 06474

Decided on December 19, 2023

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: December 19, 2023

Before: Kern, J.P., Friedman, Kennedy, Pitt-Burke, JJ. 

Index No. 158538/18 Appeal No. 947 Case No. 2023-00233 

[*1]Kyle Doherty, et al., Plaintiffs-Appellants,
v
730 Fifth Upper, LLC, et al., Defendants-Respondents, Wharton Properties, LLC, et al., Defendants.

Kent, Beatty & Gordon, LLP, New York (Joshua B. Katz of counsel), for appellants.
Kahana Feld LLP, New York (John F. Watkins of counsel), for 730 Fifth Upper LLC, 730 Fifth Retail, LLC and General Growth Services Inc., respondents.
Fixler & LaGattuta, LLP, New York (Jason L. Fixler of counsel), for CBRE, Inc., respondent.

Order, Supreme Court, New York County (Louis L. Nock, J.), entered on or about December 28, 2022, which granted defendants 730 Fifth Upper, LLC, 730 Fifth Retail, LLC, General Growth Services, Inc. (730-Gen), and CBRE, Inc.'s (CBRE) motions for summary judgment dismissing the complaint, unanimously modified, on the law, to the extent of denying the motion of 730-Gen, and otherwise affirmed, without costs.
Plaintiff Kyle Doherty alleges he was injured when the glass door that he used to enter the lobby of the Crown Building at 730 Fifth Avenue, shattered, causing glass and metal debris to fall on him. Specifically, plaintiff contends that as he pulled on the interior vestibule door's metal door handle, the top two connection points immediately failed, causing the handle to swing free, hit the floor, and shatter the door as he entered the building.
The standard of reasonable care that governs a landowner's duty to anyone that enters its property requires that "[a] landowner must act as a reasonable [person] in maintaining [the] property in a reasonably safe condition in view of all the circumstances, including the likelihood of injuries to others, the seriousness of the injury and the burden of avoiding risk" (see Basso v Miller, 40 NY2d 233, 241 [1976] [internal quotation marks omitted]). Thus, "[a] property owner is subject to liability for a defective condition on its premises if a plaintiff demonstrates that the owner either created the alleged defect or had actual or constructive notice of it" (Singh v United Cerebral Palsy of N.Y. City, Inc., 72 AD3d 272, 275 [1st Dept 2010]). Where, however, an object capable of deteriorating is concealed from view, "a property owner's duty of reasonable care entails periodic inspection of the area of potential defect" (Hayes v Riverbend Hous. Co., Inc., 40 AD3d 500, 501 [1st Dept 2007], lv denied 9 NY3d 809 [2007]).
Here, it is undisputed that 730-Gen did not create or have actual notice of the defect in the door handle at the time of plaintiff's accident. However, 730-Gen failed to meet its initial burden of establishing, prima facie, that it lacked constructive notice of the alleged defective condition. Specifically, 730-Gen has failed to establish that it performed reasonable inspections on the vestibule door's handle, which was designed to be attached to the glass door frame with screws located behind the handle at three connection points, thus constituting an object capable of deteriorating that was concealed from view (see Sanders v Morris Hgts. Mews Assoc., 69 AD3d 432, 433 [1st Dept 2010]; Hayes, 40 AD3d at 501).
Although 730-Gen's urban portfolio manager testified that he inspected the interior vestibule doors following an incident that involved the exterior doors in the weeks prior to plaintiff's accident, his testimony only provided a vague description of the inspection performed. Importantly, he could not identify exactly when the inspection occurred, and he did not indicate that any steps [*2]were taken to examine the door's metal handle.
The urban portfolio manager further testified that defendants had a daily inspection protocol in place to inspect the vestibule doors. However, he admitted that he had never seen anyone perform a daily inspection and he could not identify when the last inspection occurred prior to plaintiff's accident. While he also testified that the building engineer and security guard on duty were responsible for completing the daily inspections, which included checking the door handle to ensure that the handle was secure and functioning properly, his testimony was largely contradicted by the chief engineer, property manager and security guard on duty at the time of plaintiff's accident.
730-Gen also asserts that the doors received cursory inspections, in that they were used on a daily basis. Yet, there is no record of these cursory inspections taking place(see Singh v Citibank, N.A., 136 AD3d 521 [1st Dept 2016]), or any indication that they involved a reasonable inspection of the door handle (see e.g. Peters v Trammell Crow Co., 47 AD3d 419, 420 [1st Dept 2008] [summary judgment denied because despite its acknowledged inspection procedure, defendant failed to conduct an inspection of the specific area that caused the accident to occur]).
Thus, 730-Gen's reliance on the urban portfolio manager's inspection, which occurred almost two weeks prior to plaintiff's accident, failed to establish, prima facie, that inspecting the door handle on a biweekly basis is reasonable, especially in light of the daily inspection protocol defendant contends was in place to ensure the handles were tightly secured (see Sanders, 69 AD3d at 433; Hayes, 40 AD3d at 501).
For these same reasons, 730-Gen failed to establish, prima facie, that the alleged defect in the door handle was latent and not discoverable upon a reasonable inspection on the day of plaintiff's accident (see Agosto v Museum of Modern Art, 219 AD3d 674, 676 [2d Dept 2023] ["In moving for summary judgment on the ground that [a] defect was latent, a defendant must establish, prima facie, that the defect was indeed latent—i.e., that it was not visible or apparent and would not have been discoverable upon a reasonable inspection"], quoting Arevalo v Abitabile, 148 AD3d 658, 660 [2d Dept 2017]).
With respect to the doctrine of res ipsa loquitor, the court correctly rejected the applicability of the doctrine, as the door handles were not in the exclusive control of defendants since they were indisputably used by the public daily (see Dermatossian v New York City Tr. Auth., 67 NY2d 219, 228 [1986]).
Moreover, with respect to defendant CBRE, the court correctly found that plaintiffs presented no evidence that it launched a force or instrument of harm, that they relied on its performance of its duties, or that it entirely displaced owners' duty to maintain the premises(see Espinal v Melville Snow Contrs., 98 NY2d 136, 140 [2002]). No action by CBRE with respect to the [*3]door or its handles was cited, and plaintiff testified that he was unaware of the role CBRE played at the building. Moreover, the owners' urban portfolio manager testified that he inspected the interior doors after the earlier incident with the exterior doors, thus demonstrating that the owners continued to take action to maintain the building, despite the contract with CBRE.
The court also correctly rejected plaintiffs' request for spoliation sanctions in that they filed the note of issue certifying that discovery was complete and took no action to compel a response to their requests for the visitor log and the entire surveillance tape until the instant motions were filed (see James v Kensington Assoc., LLC, 192 AD3d 587, 588 [1st Dept 2021]). Moreover, it is speculative that the balance of the video footage that was not produced would contain anything relevant (see McAddley v Western Beef Props., Inc., 188 AD3d 536, 536 [1st Dept 2020]).
We have considered the parties' remaining arguments and find them unavailing. 
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: December 19, 2023