**Marcial v JK Mgt. Corp.**

2024 NY Slip Op 32580(U)

July 24, 2024

Supreme Court, Kings County

Docket Number: Index No. 513499/2020

Judge: Joy F. Campanelli

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

At an IAS Term, Part 6, of the Supreme Court of the State of New York, held in and for the County of Kings, at the Courthouse, at 360 Adams Street, Brooklyn, New York, on the 24th day of July, 2024.

P R E S E N T:

HON. JOY F. CAMPANELLI,
                             Justice.

------------------------------------------------------------------------X

EFRAIN MARCIAL,

                           Plaintiff,

        -against-                                   Index No.: 513499/2020

JK MANAGEMENT CORP. and
MILLENNIUM ELEVATOR ENTERPRISES, LLC,

                           Defendants.

------------------------------------------------------------------------X

| The following e-filed papers read herein: | NYSCEF Nos.: |
|---|---|
| Notice of Motion/Order to Show Cause/ Petition/Cross Motion and Affidavits (Affirmations) Annexed | 1, 5, 6, 8, 56, 68, 72, 73, 78-96 |
| Opposing Affidavits (Affirmations) | 129, 131,133,137,140-152 |
| Affidavits/ Affirmations in Reply | 153, 154, 155 |
| Other Papers: | |

This action arises out of an incident in which plaintiff Efrain Marcial (plaintiff) allegedly suffered injuries when an elevator closed on his hand and wrist. Plaintiff commenced an action against defendants JK Management Corporation (JK), a property

[* 1]

management company, and Millennium Elevator Enterprises, LLC (Millennium), an elevator maintenance company, for negligence. In its answer, JK, inter alia, asserted a cross-claim against Millennium, alleging that plaintiff's injuries stemmed solely from Millennium's negligence. JK also raised various affirmative defenses, one of which (sixth) alleged that Workers' Compensation Law §§ 11 and 29 (6) barred plaintiff's claims because he was a special employee of JK. Both plaintiff (in motion [mot.] sequence [seq.] 3) and Millennium (in mot. seq. 4) move, pursuant to CPLR 3212 (b), for an order striking this affirmative defense.[1] JK opposes said motions and cross-moves (in mot. seq. 5) for an order denying plaintiff and Millennium's respective motions and for summary judgment dismissing all claims against it. For the following reasons, all motions are denied.

## Factual Background

Plaintiff worked as a superintendent at 303 Beverly Road in Brooklyn, a residential and commercial co-op (building). 303 Beverley Owners Corporation (303 Beverly) owned the building, and its board managed the corporation. 303 Beverly retained JK as a property manager to handle all day-to-day operations and management of the building.[2] In January 2021, JK contracted with Millennium for the latter to maintain the two elevators in the building. This written contract required Millennium to

---

[1] Although plaintiff's motion seeks to strike JK's sixth affirmative defense, he has moved under CPLR 3212 (b), the summary judgment provision, and Millennium has adopted plaintiff's documents and arguments set forth therein. This court will therefore address both plaintiff and Millennium's motions pursuant to summary judgment principles (*see e.g., Wilson v A.H. Harris & Sons, Inc.*, 131 AD3d 1050, 1050-1051 [2d Dept 2015], *lv denied* 26 NY3d 914 [2015]).

[2] A written contract between 303 Beverly and JK has not been provided by either of the parties.

2

perform monthly maintenance on the elevators and to replace equipment as necessary. JK retained the responsibility to, inter alia, monitor the elevators for irregularities and to report known defects to Millennium.

On February 11, 2019, while plaintiff was working, he attempted to hold one of the elevators open for an elderly woman who lived in the building. As plaintiff stuck his right hand out to stop the elevator door from closing, the door continued to close thereby crushing plaintiff's hand and wrist. Plaintiff alleges that he sustained significant injuries and missed time from work, which led to his termination in November 2019 due to his inability to perform his superintendent duties.

Both JK and plaintiff retained experts to analyze what, if anything, went wrong with the subject elevator on the date of the accident. JK's expert, William Meyer, a professional engineer, concluded that the accident did not stem from JK's negligence; nor was there any evidence that the elevator, or any of its accompanying safety features, were in a defective condition. Meyer explained that an elevator door should take approximately one second to close for every foot it needs to travel, per the American Society of Mechanical Engineers (ASME) A17.1 Safety Code for Elevators and Escalators (the code). Thus, in this case, which involves a 36-inch-wide elevator opening, Meyer opined that it should have taken approximately three seconds for the elevator doors to close, which he claimed did occur as reflected in the surveillance video of the incident (NYSCEF Doc No. 96, at ¶19). Plaintiff's expert, Michael Vallone, countered Meyer's conclusion. Upon his review of the surveillance video, Vallone concluded that the elevator took 1.7 seconds to close, which was much faster than the three seconds as

3

[* 3]

contended by Meyer. Vallone opined that the elevator closed at nearly twice the minimum speed permitted by the code, and that it would not have closed at such an excessive rate of speed if it had been properly maintained and serviced (NYSCEF Doc No. 152, ¶10).

As to plaintiff's employee-employer relationship, plaintiff testified during his deposition as follows: (1) that 303 Beverly was his employer; (2) his W-2 and 1099 forms listed 303 Beverly as his employer; and (3) that 303 Beverly paid for plaintiff's apartment within the building, provided benefits, and set his hours and schedule. Additionally, David Blau, JK's president, stated that plaintiff was an employee of 303 Beverley which had hired him and paid his salary. Blau further stated that JK did not provide plaintiff with financial compensation. However, Yehuda Friedman, a property manager with JK, stated that JK supervised and managed plaintiff, and that JK and 303 Beverly jointly made hiring and firing decisions. In addition, plaintiff stated that JK would give him some assignments, although JK did not do so exclusively. Plaintiff went on to state that JK did not supervise him, and that he (plaintiff) had latitude in how to perform his work.

**Discussion**

*Standard of Review*

The movant must show entitlement to judgment as a matter of law for a court to award summary judgment, tendering sufficient evidence to demonstrate the absence of any material issues of fact (*see Zuckerman v New York*, 49 NY2d 557, 562 [1980]). Should the movant do this, the burden shifts to the nonmoving party to show a dispute of

4

[* 4]

material fact (*see Alvarez v Prospect Hosp.*, 68 NY2d 320, 324 [1986]). Considering a summary judgment motion requires viewing the evidence in the light most favorable to the motion opponent (*see Vega v Restani Constr. Corp,* 18 NY3d 499, 503 [2012]).

*Special Employment Doctrine*

Both plaintiff and Millennium moved for summary judgment to dismiss JK's sixth affirmative defense that Workers' Compensation Law §§ 11 and 29 (6) bar plaintiff's claim against it. JK then cross-moved for summary judgment on this defense seeking dismissal of all claims against it. Upon review of the parties' submissions, no party is entitled to summary judgment on this ground.

Workers' Compensation Law §§ 11 and 29 (6) protect employers against lawsuits from a worker injured on the job (*see Mauro v Zorn Realties, Inc.*, 206 AD3d 645, 647 [2d Dept 2022]). "Generally, workers' compensation benefits are the sole and exclusive remedy of an employee against an employer . . . for injuries sustained in the course of employment" (*Dolores v Grandpa's Bus Co., Inc.*, 227 AD3d 776 [2d Dept 2024]). These statutes also extend to special employers and special employees (*see e.g. Mauro*, 206 AD3d at 647-648). "A special employee is described as one who is transferred for a limited time of whatever duration to the service of another" (*Thompson v Grumman Aerospace Corp.*, 78 NY2d 553, 557 [1991]). No one factor is dispositive in determining whether there is a special employment relationship (*see Mauro*, 206 AD3d at 647). The main factor to see if such a relationship existed is "who control[ed] and direct[ed] the manner, details, and ultimate result of the employee's work" (*Rodriguez v 27-11 49th Ave. Realty, LLC*, 222 AD3d 1013, 1014 [2d Dept 2023] [internal quotation marks

5

[* 5]

omitted]). Other pertinent factors include who paid wages, provided equipment, was able to terminate the employee, and received the benefit of the employee's work (*see Mauro*, 206 AD3d at 647). Typically, this determination is a question of fact (*see Munion v Trustees of Columbia Univ. in City of New York*, 120 AD3d 779, 780 [2d Dept 2014]). This determination becomes a question of law only when there are "undisputed critical facts" (*id.*)

Here, neither party has made a prima facie showing entitling them to summary judgment on this ground. Although the parties pointed to evidence that, when viewed in isolation, would support their respective motions, they also submitted evidence that leave unresolved questions of fact regarding plaintiff's employment status. In this regard, plaintiff submitted his deposition transcript wherein he testified that 303 Beverly was his employer; the deposition testimony of David Blau, JK's president, that plaintiff was an employee of 303 Beverly; and pay stubs and a termination letter that each listed 303 Beverly as plaintiff's employer. However, plaintiff also testified that he reported to a JK employee and that multiple JK employees would regularly tell him what work to perform. In addition, Yehuda Friedman, a property manager with JK, averred in a sworn affidavit that he was plaintiff's direct supervisor on the date of the accident and that he gave plaintiff assignments and instructions daily, which included building repairs and maintenance (NYSCEF Doc No. 91, ¶¶4, 6-7). Based upon the foregoing, issues of fact exist as to who "controlled and directed the manner, details, and ultimate result of [plaintiff's] work" (*Mauro,* 206 AD3d at 647-648; *see also Weitz v Anzek Constr. Corp.*, 65 AD3d 678, 680 [2d Dept 2009]; *cf. Gonzalez v Woodbourne Arboretum, Inc.*, 100

6

[* 6]

AD3d 694, 698 [2d Dept 2012]). Accordingly, plaintiff's and Millenium's respective motions to strike JK's sixth affirmative defense are denied, and that branch of JK's cross motion to dismiss all claims against it based upon this defense is also denied (*see D'Alessandro v Aviation Constructors, Inc.*, 83 AD3d 769, 771 [2d Dept 2011]; *cf. Thompson*, 78 NY2d at 559).

*JK's Liability*

Notwithstanding the question of fact as to whether JK was plaintiff's special employer, JK argues that it is nonetheless entitled to summary judgment on liability as (1) it did not owe plaintiff a duty; (2) the elevator was not defective; and (3) even if the elevator was defective, JK lacked notice of said defect. Contrary to JK's contentions, it has failed to make a prima facie showing of entitlement to judgment, as a matter of law, dismissing all claims as asserted against it.

"A property owner [and its managing agent] can be held liable for an elevator-related injury where there is a defect in the elevator, and the property owner has actual or constructive notice of the defect, or where it fails to notify the elevator company with which it has a maintenance and repair contract about a known defect" (*Goodwin v Guardian Life Ins. Co. of Am.,* 156 AD3d 765, 766 [2d Dept 2017] [citations omitted]; *see Oxenfeldt v 22 N. Forest Ave. Corp.,* 30 AD3d 391, 392 [2d Dept 2006]). Moreover, negligence in the maintenance of an elevator may be inferred from evidence of prior malfunctions (*see Rogers v Dorchester Assoc.*, 32 NY2d 553, 557, 559 [1973]; *Dykes v Starrett City, Inc.*, 74 AD3d 1015 [2d Dept 2010]). Similarly, "[a]n elevator company which agrees to maintain an elevator in safe operating condition may be liable to a

7

[* 7]

passenger for failure to correct conditions of which it has knowledge or failure to use reasonable care to discover and correct a condition which it ought to have found" (*Sanchez v City of New York*, 211 AD3d 1065, 1066 [2d Dept 2022]).

Here, contrary to JK's contention, JK, as the property manager of 303 Beverley, and therefore an agent of the owner, had a nondelegable duty to passengers to maintain its building's elevators in a reasonably safe manner (*see Dykes,* 74 AD3d at 1016) and can be held liable for an elevator-related injury where there is a defect in the elevator, and it had actual or constructive notice of the defect (*see Goodwin,* 156 AD3d at 767, *Cilinger v Arditi Realty Corp.*, 77 AD3d 880, 882 [2d Dept 2010]). Based upon the parties' submissions, JK is not entitled to summary judgment under the theory that the elevator was not defective, or that it lacked notice of said defect. Even assuming that JK met its burden through Meyer's expert affidavit (*see e.g. Cilinger,* 77 AD3d at 882), the expert affidavit submitted by the plaintiff (Vallone) raises issues of fact as to whether the elevator was defective. In this regard, Vallone opined that, at the time of the accident, the elevator door closed at an appreciably faster rate of speed (1.7 seconds) than the ASME code permitted, thereby raising an issue of fact as to whether it was defective (*see e.g. Love v New York City Hous. Auth.*, 251 AD2d 553, 554 [2d Dept 1998]).

Additionally, plaintiff submitted deposition and affidavit testimony from individuals familiar with the elevator at issue. For instance, Ernesto Escalera, a tenant who has resided in the building for approximately 14 years, averred in a sworn affidavit that the elevator doors would slam shut and close too fast, and in fact closed on him on several occasions, and that this occurred on a daily basis for several years prior to the

8

[* 8]

date of the accident (NYSCEF Doc No. 151, at ¶3). In addition, Agnes Marcial, plaintiff's spouse, testified during her deposition that, prior to the date of the accident, numerous tenants in the building had made numerous complaints that the elevator doors were slamming and not closing properly (NYSCEF Doc No. 148, A. Marcial tr, at 33-34). Furthermore, according to the deposition testimony of David Blau, the president of JK, JK's sole business office was located on the first floor of the subject building, and that all of its staff, including Mr. Friedman, JK's property manager assigned to the building, worked out of this office daily (NYSCEF Doc No. 145, at 28-30). The foregoing evidence (which suggests that the problem with the elevator doors existed for several years before plaintiff's injury occurred) not only raises an issue of fact as to whether the elevator was defective at the time of the accident, but also as to whether JK, which had a daily presence in the building, had actual or constructive notice of said condition (*see Roserie v Alexander's Kings Plaza, LLC*, 171 AD3d 822, 823 [2d Dept 2019] [evidence of multiple service calls to repair the subject elevator, including one which occurred the day before the accident raised issues of fact as to whether elevator was defective and whether defendant had actual or constructive notice of defect]; *Urman v S & S, LLC,* 85 AD3d 897, 898 [2d Dept 2011]; *Green v City of New York*, 76 AD3d 508, 509 [2d Dept 2010] [defendant's "evidentiary submissions, including the deposition testimony of the plaintiff who claimed to have made prior complaints that the door of the subject elevator closed too quickly, were insufficient to eliminate all triable issues of fact as to whether it had actual or constructive notice of the allegedly malfunctioning door"]; *see generally Sanchez,* 211 AD3d at 1066).

9

[* 9]

*Res Ipsa Loquitur*

Next, JK raises the doctrine of res ipsa loquitur, contending that it is not applicable herein. "In a proper case, under the doctrine of res ipsa loquitur, the law allows a jury to consider the circumstantial evidence and infer that the defendant was negligent in some unspecified way." (*Morejon v Rais Const. Co.*, 7 NY3d 203, 205-206 [2006]). For res ipsa loquitur to apply, a plaintiff must show: "(1) the event must be of a kind which ordinarily does not occur in the absence of someone's negligence; (2) it must be caused by an agency or instrumentality within the exclusive control of the defendant; (3) it must not have been due to any voluntary action or contribution on the part of the plaintiff" (*Marinaro v Reynolds*, 152 AD3d 659, 661 [2d Dept 2017] [internal quotation marks omitted]). While it is unclear from the record whether plaintiff's injuries would have happened absent negligence (*see Fyall v Centennial El. Indus., Inc.*, 43 AD3d 1103, 1104 [2d Dept 2007]; *Carrasco v Millar El. Indus.*, 305 AD2d 353, 354 [2d Dept 2003]), or what degree of control JK had over the elevator at issue (*see Dermatossian v New York City Tr. Auth.*, 67 NY2d 219, 227 [1986]), the applicability of the res ipsa loquitur doctrine is a matter best left for the trial judge to decide.

All other issues not specifically addressed herein have been considered by the court and found to be without merit.

Accordingly, it is hereby

**ORDERED** that Plaintiff EFRAIN MARCIAL's motion (mot. seq. 003) for summary judgment to dismiss defendant JK MANAGEMENT CORP.'s sixth affirmative defense pursuant to CPLR 3212 (b), is DENIED; and it is further

10

[* 10]

**ORDERED** that defendant MILENNIUM ELEVATOR ENTERPRISES, LLC's motion (mot. seq. 004) for summary judgment to dismiss defendant JK MANAGEMENT CORP.'s sixth affirmative defense pursuant to CPLR 3212 (b) is DENIED; and it is further

**ORDERED** that defendant JK MANAGEMENT CORP.'s cross-motion (mot. seq. 005) for summary judgment to dismiss all claims against it pursuant to CPLR 3212 (b) is DENIED.

This constitutes the decision and order of the Court.

E N T E R,

*Jay F. Companelli*

J. S. C.

11

[* 11]