540

[997 NE2d 133, 974 NYS2d 308]

MARGUERITE JAMES, Appellant, v DAVID WORMUTH, M.D., et al., Respondents.

Argued May 28, 2013; decided June 27, 2013

## POINTS OF COUNSEL

*Woodruff L. Carroll*, Syracuse, for appellant. I. A jury could infer without an expert that the wire would not have been left in the patient absent negligence. (*Rockefeller v Moront*, 81 NY2d 560; *Kambat v St. Francis Hosp.*, 89 NY2d 489; *States v Lourdes Hosp.*, 100 NY2d 208; *Critelli v Long Is. Jewish-Hillside Med. Ctr.*, 115 AD2d 632; *Gravitt v Newman*, 114 AD2d 1000; *Connors v University Assoc. in Obstetrics & Gynecology, Inc.*, 4 F3d

123.) II. The case is simple enough for a jury to understand without an expert. (*States v Lourdes Hosp.*, 100 NY2d 208; *Kambat v St. Francis Hosp.*, 89 NY2d 489; *Rockefeller v Moront*, 81 NY2d 560.) III. No expert is needed because the medical judgment defense is not compatible with res ipsa loquitur. (*Rockefeller v Moront*, 81 NY2d 560; *Nestorowich v Ricotta*, 97 NY2d 393.) IV. No expert is needed because the medical judgment charge does not apply to the physician deciding which of two foreseeable evils that resulted from his negligence is the lesser evil. V. No expert is needed because there is no limit to the facts that res ipsa loquitur can be applied to. (*Kambat v St. Francis Hosp.*, 89 NY2d 489; *Griffen v Manice*, 166 NY 188; *Condit v Baldwin*, 21 NY 219; *Mullen v St. John*, 57 NY 567.) VI. The jury decides the importance of the state of mind and intent of defendant in deciding if there is negligence on the facts of the case. (*Kambat v St. Francis Hosp.*, 89 NY2d 489.) VII. The state of mind of defendant and his intention are just one more piece of circumstantial evidence for the jury to consider in determining fault without an expert. (*Palsgraf v Long Is. R.R. Co.*, 248 NY 339; *Pike v Consolidated Edison Co. of N.Y.*, 303 NY 1.) VIII. The cases where defendant intentionally left a foreign object in the patient as part of the agreed treatment have no relevance here and no expert is needed to explain this. (*States v Lourdes Hosp.*, 100 NY2d 208; *Rockefeller v Moront*, 81 NY2d 560.) IX. Prior cases of the Court of Appeals recognize a clear distinction between items left in the patient after the operation that were intended to be removed (foreign object cases) and items that were intended to be left in the patient but were not removed (fixation cases). (*Rockefeller v Moront*, 81 NY2d 560.) X. Plaintiff proved a case of gross negligence/willful misconduct. XI. Plaintiff used defendant physician as an expert to explain circumstances surrounding the operation. (*States v Lourdes Hosp.*, 100 NY2d 208.) XII. The lower court erred in not sending questions of fact to the jury. XIII. There are no credibility issues in foreign object cases for an expert opinion. (*Flanagan v Mount Eden Gen. Hosp.*, 24 NY2d 427.) XIV. The lower courts erred; as a matter of law plaintiff did not waive her claim. (*Kambat v St. Francis Hosp.*, 89 NY2d 489.) XV. The Court should affirm the dissent in the Appellate Division. XVI. Plaintiff is entitled to every factual inference in her favor. (*Szczerbiak v Pilat*, 90 NY2d 553.) XVII. Plaintiff proved res ipsa loquitur. (*Kambat v St. Francis Hosp.*, 89 NY2d 489; *Ebanks v New York City Tr. Auth.*, 70 NY2d 621.) XVIII. The operation was under the control of defendant. XIX. Plaintiff was anaesthetized while the

wire was lost and could not be contributorily negligent. XX. Defendant owes a duty to plaintiff as a physician to a patient.

*Martin, Ganotis, Brown, Mould & Currie, P.C.*, DeWitt (*Mark L. Dunn* and *Daniel P. Laraby* of counsel), for respondents. The Appellate Division properly affirmed the trial court's judgment dismissing plaintiff's complaint as she failed to establish a prima facie case of medical malpractice based on res ipsa loquitur, where her sole claim challenged Dr. Wormuth's judgment to leave a piece of guide wire which had dislodged from the lung and become embedded in chest muscle tissue, rather than subject her to a more intrusive procedure with attendant surgical risks to try and locate and remove the wire. (*Dermatossian v New York City Tr. Auth.*, 67 NY2d 219; *Kambat v St. Francis Hosp.*, 89 NY2d 489; *Rockefeller v Moront*, 81 NY2d 560; *Rodriguez v Manhattan Med. Group*, 77 NY2d 217; *Castro v New York City Health & Hosps. Corp.*, 74 AD3d 1005; *Lidge v Niagara Falls Mem. Med. Ctr.*, 17 AD3d 1033.)

### OPINION OF THE COURT

RIVERA, J.

Plaintiff Marguerite James commenced this medical malpractice action against defendants Dr. David Wormuth and his practice, CNY Thoracic Surgery, P.C., after he failed to remove a localization guide wire during a biopsy of an area on plaintiff's lung. On this appeal from the Appellate Division order affirming the dismissal of her amended complaint, we affirm.

In October 2004, a guide wire inserted into the plaintiff to assist with a biopsy of an area in her lung dislodged. Defendant Dr. Wormuth proceeded with the biopsy, but was unable to locate the dislodged wire. After an unsuccessful 20-minute manual search for the wire, defendant determined that it was better for the plaintiff to leave the wire and end the surgical procedure, rather than to extend the amount of time she was in surgery for him to continue searching for the wire. Defendant informed plaintiff after the surgery that he could not find the wire, and that he had determined that it was better to leave it rather than continue the search procedure.

Plaintiff subsequently returned to defendant complaining of pain she attributed to the lodged wire, and which she said was so significant that it disrupted her ability to work. Approximately two months after the first procedure, defendant performed a second operation. In that procedure, he successfully

located and removed the wire with the use of a special X-ray machine known as a C-arm.

Plaintiff then commenced this medical malpractice action.[1] Plaintiff's evidence at trial consisted of her testimony about, among other things, her discussion with Dr. Wormuth after the procedure, the postoperative pain and its impact on her ability to work, as well as the testimony of two of her clients as to the apparent disruption to her work caused by the pain, and Dr. Wormuth's testimony describing the procedure and his decision to leave the wire inside the plaintiff. Plaintiff also introduced several medical records relating to both procedures, including Dr. Wormuth's file, operation reports, a surgical pathology report, and an X-ray report produced during the period between the two procedures.

At the close of plaintiff's case, defendants moved to dismiss for failure to establish a prima facie case of medical malpractice. Defendants argued that plaintiff failed to show a deviation from accepted standards of medical practice, and also that such deviation was the proximate cause of the plaintiff's injury. Defendants pointed specifically to plaintiff's failure to present any expert proof on the standard of practice. Anticipating plaintiff's response, defendants argued that res ipsa loquitur was inapplicable because there was no evidence of any error by Dr. Wormuth that caused the wire to become dislodged.

Plaintiff objected to the motion and argued that expert testimony was unnecessary because Dr. Wormuth admitted that he intentionally left the wire inside the plaintiff. Therefore, a jury could infer negligence given that there was no medical reason to leave the wire lodged in plaintiff, and defendant could have obtained a C-arm to locate and remove it. Plaintiff asserted that res ipsa loquitur necessarily applied because the wire was a foreign object that could only have been left in the plaintiff as a result of the doctor's negligence.

During argument on the motion, and in response to the court's specific inquiry as to the plaintiff's theory of the case, plaintiff's counsel confirmed that the case focused on defendant's failure to remove the wire.

---

1. Supreme Court granted defendant's summary judgment motion dismissing plaintiff's original complaint. Plaintiff successfully appealed, and the Appellate Division reinstated the complaint (see 74 AD3d 1895 [4th Dept 2010] [summary judgment improperly granted where affidavits of defendants' medical experts did not address the specific claims of negligence raised in plaintiff's complaint]). Plaintiff subsequently filed an amended complaint and proceeded to a jury trial.

"[The court]: . . . Your theory here is that he committed negligence and malpractice by failing to retrieve it back on October the 28th —

"[Counsel]: Right.

"[The court]: — during the first surgery?

"[Counsel]: As it's gone in, your Honor, that is the case. If I had an expert, it would have been a different one, but that's what the case is right now."

The court subsequently granted a directed verdict in defendants' favor, pursuant to CPLR 4401.

The Appellate Division affirmed in a 3-2 decision (93 AD3d 1290 [4th Dept 2012]). The majority concluded that the trial court properly granted defendants' motion, and dismissed the amended complaint based upon plaintiff's failure to demonstrate a prima facie case of medical malpractice. The majority rejected plaintiff's contention that she had submitted sufficient proof under the doctrine of res ipsa loquitur to submit the case to the jury, given that plaintiff failed to argue or present proof that the doctor had unintentionally abandoned the wire inside plaintiff. The majority reasoned that because plaintiff relied upon defendant's allegedly improper exercise of medical judgment, plaintiff could not rely upon the theory of res ispa loquitur. The dissent disagreed that defendant purposefully abandoned the wire, and instead attributed the unintentional loss of the wire to the doctor's actions. The dissent concluded that, similar to plaintiff's argument in opposition to defendants' motion for a directed verdict, res ispa loquitur properly applies given that a foreign object remained in plaintiff's body. Plaintiff appealed to this Court as of right pursuant to CPLR 5601 (a).

On appeal before this Court, plaintiff continues to press her arguments that expert testimony was unnecessary, and that res ipsa loquitur applies to this case because the fact that the wire was left in the plaintiff in and of itself establishes defendants' liability. Plaintiff further argues that the wire should be treated as a foreign object left inside the plaintiff, and therefore negligence may be inferred.

Ordinarily, a plaintiff asserting a medical malpractice claim must demonstrate that the doctor deviated from acceptable medical practice, and that such deviation was a proximate cause of the plaintiff's injury (*see Rivera v Kleinman*, 16 NY3d 757, 759 [2011]; *Frye v Montefiore Med. Ctr.*, 70 AD3d 15, 24 [1st

Dept 2009]; *Terranova v Finklea*, 45 AD3d 572, 572 [2d Dept 2007]; *Zellar v Tompkins Community Hosp.*, 124 AD2d 287, 288-289 [3d Dept 1986]). The theory of res ipsa loquitur is applied to occurrences "[w]here the actual or specific cause of an accident is unknown" (*Kambat v St. Francis Hosp.*, 89 NY2d 489, 494 [1997]). Under such circumstances, "a jury may . . . infer negligence merely from the happening of an event and the defendant's relation to it" (*id.* at 494; *see States v Lourdes Hosp.*, 100 NY2d 208, 211-212 [2003]). To establish a prima facie case of negligence in support of a res ipsa loquitur charge, plaintiff must establish three elements:

> "[1.] the event must be of a kind that ordinarily does not occur in the absence of someone's negligence;
>
> "[2.] it must be caused by an agency or instrumentality within the exclusive control of the defendant; and
>
> "[3.] it must not have been due to any voluntary action or contribution on the part of the plaintiff" (*Kambat*, 89 NY2d at 494; *see* Prosser and Keeton, Torts § 39 at 244 [5th ed]).

Further, in the context of a medical malpractice case based upon a foreign object, "[r]es ipsa loquitur is applicable where . . . [the object] is *unintentionally* left in a patient following an operative procedure" (*LaPietra v Clinical & Interventional Cardiology Assoc.*, 6 AD3d 1073, 1074 [4th Dept 2004] [emphasis added]; *see Kambat*, 89 NY2d 497-498).

According to the record, plaintiff constructed her case on a theory based on the doctor's intentional choice to leave the wire inside the plaintiff, and her counsel specifically acknowledged this to the trial court. Moreover, her counsel conceded at trial that he had not submitted opinion testimony about the standard of medical care,[2] and also acknowledged that it would be a different case if he had presented expert testimony. Plaintiff, having chosen to pursue a theory of the case which focused on defendant's intentional choice to leave the wire in the plaintiff, rather than the initial dislodgment of the wire, was required to establish that the doctor's judgment deviated from accepted community standards of practice, and that such deviation was a

---

2. Counsel admitted before the trial court that he "did not introduce an opinion, that this was a breach of accepted standard of medical care. That's about all we really don't have."

proximate cause of the plaintiff's injury (*see Rivera*, 16 NY3d at 759; *see generally Gross v Friedman*, 73 NY2d 721, 723 [1988]).

Dr. Wormuth's testimony reveals that he claimed to have exercised his professional judgment during the biopsy procedure. The doctor testified that he decided to leave the wire inside the plaintiff's chest because, in his judgment, he believed it to be riskier to continue, noting that this would extend the period under which the plaintiff was anaesthetized, and require a larger incision in order to find and remove the wire. He further testified that in his experience patients could tolerate wires, that wires are under some circumstances left inside a patient, and he believed he could remove the wire in this case, if necessary, at a later time.

It is clear from the record that the doctor explained his decision to leave the wire in terms of his medical assessment of what was best for the patient under the circumstances. Defendant's testimony that it was his professional judgment to leave the wire could not be assessed by the jury based on the "common knowledge of lay persons" (*Lourdes Hosp.*, 100 NY2d at 213 [internal quotation marks and citation omitted]; *see generally Meiselman v Crown Hgts. Hosp.*, 285 NY 389, 396 [1941]). Therefore, evidence clearly was needed, in the form of expert opinion to assist a jury's understanding of whether this occurrence would have "take[n] place in the absence of negligence" (*Lourdes Hosp.*, 100 NY2d at 212).[3] Plaintiff, however, wholly failed to present any such evidence of the standards of practice, and therefore her complaint was properly dismissed.

To the extent counsel argued that res ipsa loquitur applies because the wire could only have dislodged due to the doctor's negligence, plaintiff failed to establish the elements of res ipsa, specifically that Dr. Wormuth had exclusive control (*see Dermatossian v New York City Tr. Auth.*, 67 NY2d 219, 227-228 [1986]; *see also* Prosser and Keeton, Torts § 39 at 249-250 [5th ed]). Dr. Wormuth testified that there were other medical personnel involved in the process of inserting the wire and transporting the plaintiff prior to the doctor's discovery that the wire had dislodged. Plaintiff did not produce any evidence to the contrary. Instead, plaintiff's counsel appears to have

---

**3.** Plaintiff's contention that defendant was negligent because he left the wire when he could have used the C-arm to locate it during the first surgery further establishes that the plaintiff's case turned on the propriety of the doctor's choice to leave the wire in the plaintiff and that expert opinion was necessary.

believed that the control element was satisfied because the doctor had control over the operation. Whether the doctor was in control of the operation does not address the question of whether he was in exclusive control of the instrumentality, because several other individuals participated to an extent in the medical procedure. Given that plaintiff failed to produce any evidence that the doctor had exclusive control of the wire, or sufficient proof that "eliminate[s] within reason all explanations for the injury other than the defendant's negligence," the control element clearly has not been satisfied (*Dermatossian*, 67 NY2d at 227). Although the control requirement does not mean that "the possibility of other causes must be altogether eliminated, . . . [the] likelihood must be so reduced that the greater probability lies at defendant's door" (*id.*).

Plaintiff's argument that the wire should be treated as a foreign object in support of her res ipsa claim is unpersuasive because her theory of the case was the doctor negligently chose to leave the wire. Thus, this case is distinguishable from those involving objects left unintentionally, where, as plaintiff argues, no decision to leave the object has been made which must be measured against a standard of care. Plaintiff's other contention that the defendant committed gross negligence is similarly without merit.

Here, defendant exercised his professional judgment when he chose to leave the object in the plaintiff, and plaintiff did not present any expert evidence that by so doing, the defendant departed from accepted standards of medical care. Plaintiff failed to demonstrate a prima facie case of medical malpractice based upon res ipsa loquitur, or traditional negligence principles. "As advantageous as the res ipsa loquitur inference is for a plaintiff unable to adduce direct evidence of negligence, application of the [evidentiary] doctrine does not relieve a plaintiff of the burden of proof" (*Lourdes Hosp.*, 100 NY2d at 213).

Accordingly, the Appellate Division order should be affirmed, with costs.

Chief Judge LIPPMAN and Judges GRAFFEO, READ, SMITH, PIGOTT and ABDUS-SALAAM concur.

Order affirmed, with costs.