Lahtinen, J.
Appeal from an order of the Supreme Court *1199 (Rumsey, J.), entered July 6, 2012 in Tompkins County, which granted defendants’ motion for summary judgment dismissing the complaint.
Plaintiff Joan Jacobs Brumberg (hereinafter plaintiff) and her husband, derivatively, brought this negligence action for injuries sustained when plaintiff ingested a lVa-inch shard of wood. Plaintiff contends that she consumed the item while eating various hors d’oeuvres at a fundraising event in New York City sponsored by Cornell University where defendant Cipriani USA, Inc. provided the food and service. Within 30 minutes of eating, she experienced the onset of sharp pain in her abdomen and left the event; she sought medical advice later in the evening. She continued experiencing pain and seeking medical care until, about two weeks later, the shard was discovered and removed during an endoscopy. Internal injuries caused by the shard necessitated two surgeries. Following disclosure, defendants moved for summary judgment dismissing the complaint asserting, among other things, a lack of proof of causation. Plaintiffs contended that, with the aid of the inference provided by res ipsa loquitur, they had established triable issues. Supreme Court granted defendants’ motion and plaintiffs appeal.
The two primary issues framed by the parties on appeal are whether plaintiffs produced sufficient proof that the ingestion of the shard occurred at the fundraising event and, if so, whether there is sufficient proof of defendants’ negligence regarding the presence of the shard. The first issue does not implicate res ipsa loquitur and the proof, viewed most favorably to plaintiffs (see e.g. Sutin v Pawlus, 105 AD3d 1293, 1295 [2013]), is sufficient to raise a factual question. Plaintiff, together with other Cornell University professors, took an early morning bus from the City of Ithaca, Tompkins County to New York City. She reportedly ate yogurt and granola on the bus and vegetarian pasta in the early afternoon (by about 1:00 p.m.). She experienced no abdominal pain throughout the afternoon and consumed no other food until about five hours later at the fundraising event, where she had assorted hor d’oeuvres from about 5:45 p.m. to 6:15 p.m. The sharp pain started at approximately 6:45 p.m. and she recalled that it was located above her navel but below her chest. She sought medical attention that evening, again the following day and numerous times throughout the ensuing two weeks — including an ultrasound, an X ray and a CAT scan — as her problem continued until the shard was found during an endoscopy. Significantly, her personal physician, who was involved in her treatment, opined to a reasonable degree of medical certainty that the onset of plaintiff’s *1200 acute pain occurred as a result of ingesting the wood shard at the time of the fundraising event. While defendants cite to cases where a foreign object in food is discovered immediately (see e.g. Krall v Shaker Ridge Country Club, 51 AD2d 481, 482 [1976], lv denied 40 NY2d 802 [1976]), those cases typically involve injury in the mouth, throat or upper esophagus; here, the approximately 30-minute delay in the onset of pain is explained by the fact (and supported by expert evidence) that the item had moved further through plaintiff’s digestive system before becoming caught and causing pain. The relevant facts as related by plaintiff, together with the expert opinion, are sufficient to raise an issue for the factfinder as to whether the shard was ingested at the fundraising event.
The next issue is whether there is ample evidence of defendants’ negligence. The shard that was removed from plaintiffs body was examined by plaintiffs’ expert and compared to the wooden skewers or toothpicks used by Cipriani in serving some of the food. The expert determined that the shard and skewers were not the same material. While a finding that the two samples were from the same wood product would have been some direct evidence supporting plaintiffs’ case, the absence of such a finding is not necessarily fatal to plaintiffs’ case. Instead, it becomes similar to cases where an object unrelated to the food (such as glass or a tack) is found (see Restatement [Second] of Torts § 328 D, Comment e, Illustrations 1 and 2; see also Krall v Shaker Ridge Country Club, 51 AD2d at 483) and, to show defendants’ potential negligence in the absence of direct evidence, plaintiffs turn to res ipsa loquitur.
Res ipsa loquitur is neither a theory of liability nor a presumption of liability, but instead is simply a permitted inference— that the trier of fact may accept or reject — reflecting a “commonsense application of the probative value of circumstantial evidence” (Abbott v Page Airways, 23 NY2d 502, 512 [1969] [internal quotation marks and citation omitted]; see Morejon v Rais Constr. Co., 7 NY3d 203, 209 [2006]; Dermatossian v New York City Tr. Auth., 67 NY2d 219, 226 [1986]; 1A NY PJI3d 2:65 at 379 [2013]). Criteria for res ipsa loquitur to apply are that “(1) the event must be of a kind which ordinarily does not occur in the absence of someone’s negligence; (2) it must be caused by an agency or instrumentality within the exclusive control of the defendant; [and] (3) it must not have been due to any voluntary action or contribution on the part of the plaintiff’ (Morejon v Rais Constr. Co., 7 NY3d at 209 [quotation marks and citations omitted]; see James v Wormuth, 21 NY3d 540, 546 [2013]). The parties dispute the exclusive control element and, to establish *1201 that element, plaintiffs were “not obligated to eliminate every alternative explanation for the event, but only to demonstrate that the likelihood of causes other than the defendants’] negligence is so reduced that the greater probability lies at defendants’] door, rendering it more likely than not that the injury was caused by defendants’] negligence” (Norton v Albany County Airport Auth., 52 AD3d 871, 875 [2008] [internal quotation marks and citations omitted]; see Corcoran v Banner Super Mkt., 19 NY2d 425, 431-432 [1967]).
Here, the event occurred at a banquet hall operated by Cipriani. Cipriani prepared and provided all of the food. Attendees were not permitted to bring food onto the premises. Individuals undisputedly under Cipriani’s control (pursuant to a contractual arrangement) acted as captains, servers and bartenders. Cipriani thus exclusively prepared, provided and served the food. Although the shard possibly could have been present when the ingredients for food were purchased from suppliers, it was not so small as to have been likely concealed and thus not visible upon careful preparation (cf. Restatement [Second] of Torts § 328 D, Comment e, Illustration 2). Defendants point to the fact that other attendees had access to the hor d’oeuvres as reflecting a lack of exclusive control. Plaintiffs presented proof that plaintiff started eating 15 minutes before most guests arrived (the program officially started at 6:00 p.m.) so as to be free to converse with as many attendees as possible. Also, Cipriani’s personnel were present in the room serving the food both butler style and at stations, thus reducing the likelihood of some third party placing the shard unseen in food. There is sufficient proof under these circumstances to find ample control by defendants for purposes of res ipsa loquitur.
Defendants’ further contention that res ipsa loquitur is foreclosed by their allegation of contributory negligence by plaintiff in not seeing the shard or discerning it while chewing the food in which it was located is without merit. Plaintiffs’ set forth ample proof to avoid summary judgment.
Peters, P.J., Rose and Egan Jr., JJ., concur. Ordered that the order is reversed, on the law, with costs, and motion denied.