Mattison v OrthopedicsNY, LLP (2020 NY Slip Op 08143)





Mattison v OrthopedicsNY, LLP


2020 NY Slip Op 08143


Decided on December 31, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: December 31, 2020

530363

[*1]Judith A. Mattison et al., Respondents,
v
OrthopedicsNY, LLP, et al., Appellants, et al., Defendants.

Calendar Date: November 19, 2020

Before: Garry, P.J., Egan Jr., Aarons and Pritzker, JJ.


Monaco Cooper Lamme & Carr, PLLC, Albany (Adam H. Cooper of counsel), for OrthopedicsNY, LLP and others, appellants.
Thorn Gershon Tymann & Bonanni, LLP, Albany (Erin Mead of counsel), for Jemshaid Shams and another, appellants.
Powers & Santola, LLP, Albany (Michael J. Hutter of counsel), for respondents.



Garry, P.J.
Appeal from an order of the Supreme Court (Ryba, J.), entered October 23, 2019 in Albany County, which partially denied defendants' motions for summary judgment dismissing the complaint.
Defendant Frederick J. Fletcher, an orthopedic surgeon employed by defendant OrthopedicsNY (hereinafter OrthoNY), removed previously installed hardware and performed a total right knee revision upon plaintiff Judith A. Mattison at defendant St. Peter's Hospital of the City of Albany. Fletcher had two physician assistants aiding him during the surgery; one, defendant Joseph W. Kraut, was employed by OrthoNY, and the other, defendant Jemshaid Shams, was employed by St. Peter's. It appears that, at some point during the operation, Mattison's distal sciatic nerve was damaged just above her right knee. Mattison and, derivatively, her spouse, thereafter commenced this action alleging medical malpractice and lack of informed consent. Following joinder of issue and discovery, defendants filed motions for summary judgment dismissing the complaint. As is relevant here, Supreme Court denied the motions with regard to OrthoNY, Fletcher and Kraut (hereinafter collectively referred to as the OrthoNY defendants), as well as St. Peter's Hospital and Shams (hereinafter collectively referred to as the St. Peter's defendants), finding material questions of fact with regard to whether the doctrine of res ipsa loquitur applied and whether Mattison had been advised of the risk of sciatic nerve damage. The OrthoNY defendants and the St. Peter's defendants separately appeal.[FN1]
Assuming without deciding that the OrthoNY defendants and the St. Peter's defendants met their initial burden of proof on their summary judgment motions, we agree with Supreme Court that plaintiffs raised material questions of fact in response and therefore affirm. To succeed on a medical malpractice claim, a plaintiff must ultimately show that the defendant had "deviated from acceptable medical practice, and that such deviation was a proximate cause of the plaintiff's injury" (James v Wormuth, 21 NY3d 540, 545 [2013]; accord Majid v Cheon-Lee, 147 AD3d 66, 69 [2016]; Frank v Smith, 127 AD3d 1301, 1302 [2015]). As there is no proof revealing what the deviation was that led to Mattison's injury, however, plaintiffs are relying upon the doctrine of res ipsa loquitur; this permits a jury to infer negligence in medical malpractice cases where the facts "enable the jury reasonably to conclude that the accident would not happen without negligence" (Kambat v. St. Francis Hosp., 89 NY2d 489, 496 [1997]; accord Calcagno v Orthopedic Assoc. of Dutchess County, PC, 148 AD3d 1279, 1281 [2017]; see Majid v Cheon-Lee, 147 AD3d at 69). The criteria for invoking res ipsa loquitur are that: "(1) the [injurious] event must be of a kind which ordinarily does not occur in the absence of someone's negligence; (2) it must be caused by an agency or instrumentality within the exclusive control of the defendant; [and] (3) it must [*2]not have been due to any voluntary action or contribution on the part of the plaintiff" (Morejon v Rais Const. Co., 7 NY3d 203, 209 [2006] [internal quotation marks and citations omitted]; see States v Lourdes Hosp., 100 NY2d 208, 211-212 [2003]; Kambat v St. Francis Hosp., 89 NY2d at 494; Greater Binghamton Dev., LLC v Stellar 83 Ct., LLC, 173 AD3d 1512, 1512 [2019]). Here, as Mattison was under anesthesia at the time of her injury and could not have played any role in its occurrence, the third element has been satisfied. In their respective challenges, the OrthoNY defendants direct their attention to the applicability of both the first and second elements, and the St. Peter's defendants focus upon the second.
With regard to the first element, the OrthoNY defendants point out that this case does not present one of the traditional scenarios in which "no expert" was needed for "the jury reasonably to conclude that the accident would not happen without negligence" (Kambat v St. Francis Hosp., 89 NY2d at 496; accord Calcagno v Orthopedic Assoc. v Dutchess County, PC, 148 AD3d at 1281), such as where "a foreign object is left in the body of the patient, or the patient, while anesthetized, experiences an unexplained injury in an area which is remote from the treatment site" (McCarthy v Northern Westchester Hosp., 139 AD3d 825, 827 [2016] [internal citation omitted]; see Leone v United Health Servs., 282 AD2d 860, 860-861 [2001]). Assessing whether sciatic nerve damage could "occur in the absence of someone's negligence" during knee replacement surgery, in contrast, requires knowledge and experience beyond the ken of laypersons that might defeat the application of the res ipsa loquitur doctrine (Kambat v St. Francis Hosp., 89 NY2d at 494; see Young v Sethi, 188 AD3d 1339, ___, 2020 NY Slip Op 06330, *___ [2020]). However, there are instances in which "matters entirely foreign to the general population [may be] commonplace within a particular profession or specially trained segment of" our increasingly complex and stratified society (States v Lourdes Hosp., 100 NY2d at 213). For that reason, the Court of Appeals has articulated how the first element of the res ipsa loquitur doctrine may be satisfied with expert proof that "bridge[s] the gap between [the jury's] common knowledge, which does not encompass the specialized knowledge and experience necessary to reach a conclusion that the occurrence would not normally take place in the absence of negligence, and the common knowledge of physicians, which does" (id. at 212 [internal quotation marks and citation omitted]; see James v Wormuth, 21 NY3d at 547).
Here, the OrthoNY defendants produced evidence that sciatic nerve injury was an understood risk of total knee replacement surgery and that, absent any proof showing a deviation from accepted medical standards, there was no reason to believe that Mattison's injury resulted from negligence. Plaintiffs retorted that Fletcher himself, who testified that [*3]he had never seen or heard of a sciatic nerve injury being caused by knee replacement surgery and did not know how one could have been caused, did not share that purported understanding. More importantly, plaintiffs produced a redacted expert affidavit from an orthopedic surgeon who stated that a sciatic nerve injury was not a known and commonly accepted risk of properly performed knee replacement surgery — explaining, in the process, how the OrthoNY defendants' expert had misrepresented the contents of certain medical publications to claim otherwise — and opined that such an injury would not ordinarily occur in the absence of negligence. Supreme Court found, and we agree, that these dueling expert opinions and the damaging testimony of Fletcher present material questions of fact as to whether there was "a well-founded understanding [in the medical community] that the injury-causing event would not normally occur unless someone was negligent" that might, in turn, satisfy the first element of the res ipsa loquitur doctrine (States v Lourdes Hosp., 100 NY2d at 213-214; see Smith v Sommer, ___ AD3d ___, ___, 2020 NY Slip Op 07235, *2 [2020]; Sklarova v Coopersmith, 180 AD3d 510, 511 [2020]; Frank v Smith, 127 AD3d at 1302; Bernard v Bernstein, 126 AD3d 833, 835-836 [2015]; compare James v Wormuth, 21 NY3d at 547).
As to the second element, Mattison apparently sustained what her expert orthopedic surgeon called a "localized traumatic injury" to her distal sciatic nerve at some point during the surgery. Although it is unknown how that injury occurred, Fletcher, Kraut, Shams and those in the operating room were in control of any instrumentality that could have caused it, and each owed a common duty to Mattison (see Corcoran v Banner Super Mkt., 19 NY2d 425, 432-433 [1967]; Schroeder v City & County Sav. Bank of Albany, 293 NY 370, 374 [1944]). To the extent that the issue was raised before Supreme Court by the OrthoNY defendants and is properly before us, such "afford[ed] a rational basis for concluding that the cause of the [injury] was probably such that [they and the St. Peter's defendants] would be responsible for any negligence connected with it" (Dermatossian v New York City Tr. Auth., 67 NY2d 219, 227 [1986] [internal quotation marks and citations omitted]; see Cole v Champlain Val. Physicians' Hosp. Med. Ctr., 116 AD3d 1283, 1286 [2014]; DeCarlo v Eden Park Health Servs., Inc., 66 AD3d 1211, 1212-1213 [2009]).
As for the related arguments of the St. Peter's defendants, plaintiffs were not required to identify the specific wrongdoer who used one of those instrumentalities to injure an unconscious Mattison (see Frank v Smith, 127 AD3d at 1302; Schmidt v Buffalo Gen. Hosp., 278 AD2d 827, 828 [2000], lv denied 96 NY2d 710 [2001]). Notably, Shams acknowledged in his deposition testimony that he had no independent recollection of Mattison's surgery, and the St. Peter's defendants provided nothing to substantiate their claim that Shams was following [*4]Fletcher's orders and committed no independent acts of negligence during the surgery that would subject them to liability (compare White v Bajwa, 161 AD3d 1513, 1514-1515 [2018], with Bucsko v Gordon, 118 AD3d 653, 656 [2014]).
Finally, in view of the conflicting evidence as to whether Fletcher had either "'disclose[d] the risks, benefits and alternatives to the procedure or treatment that a reasonable practitioner would have disclosed' or that 'a reasonable person in [Mattison's] position, fully informed, would have elected . . . to undergo the procedure or treatment,'" Supreme Court properly found questions of fact that precluded summary judgment dismissing plaintiffs' informed consent claim against the OrthoNY defendants (Rivera v Albany Med. Ctr. Hosp., 119 AD3d 1135, 1138 [2014], quoting Orphan v Pilnik, 15 NY3d 907, 908 [2010]; see Cole v Chun, 185 AD3d 1183, 1185-1186 [2020]).[FN2]
Egan Jr., Aarons and Pritzker, JJ., concur.
ORDERED that the order is affirmed, with costs.



Footnotes

Footnote 1: After the notices of appeal were filed, Supreme Court issued a corrected order that harmonized a decretal paragraph with the body of the text. Although the appeals should have been taken from the corrected order, that order's issuance is immaterial to the appeals as "the language in the body of the [original order] control[s]" (D'Allaird v Markline Sales, Inc., 104 AD3d 1110, n [2013]). In light of that, together with the lack of any objection, we disregard that procedural issue and reach the merits (see CPLR 5520 [c]; Matter of Stafford, 111 AD3d 1216, 1217 n 1 [2013], lv denied 23 NY3d 904 [2014]).

Footnote 2: The St. Peter's defendants advise us that the informed consent claim against them was dismissed during the pendency of this appeal, rendering their contentions regarding Supreme Court's refusal to grant summary judgment dismissing that claim moot.