**Villaruel v Consolidated El. Serv. Corp.**

2024 NY Slip Op 32404(U)

July 12, 2024

Supreme Court, New York County

Docket Number: Index No. 154180/2020

Judge: Leslie A. Stroth

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT:     HON. LESLIE A. STROTH                    PART            12M

_____
                                              _Justice_
----------------------------------------------------------------X

SEON VILLARUEL,

                            Plaintiff,

            - v -

CONSOLIDATED ELEVATOR SERVICE CORP., GRAND
AMERICA ASSOCIATES LLC, THE LUCERNE HOTEL,
EMPIRE HOSPITALITY GROUP, LLC

                            Defendant.

----------------------------------------------------------------X

| INDEX NO. | 154180/2020 |
|---|---|
| MOTION DATE | 05/31/2023 |
| MOTION SEQ. NO. | 003 |

**DECISION + ORDER ON MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 003) 78, 79, 80, 81, 82, 83, 84, 85, 86, 87, 88, 89, 90, 91, 92, 93, 94, 95, 96, 97, 98, 99, 100, 101, 102, 103, 104, 105, 107, 108, 110, 111, 112, 113, 114, 115, 116, 117, 118, 119, 120, 121, 122, 123, 124, 125, 126, 127, 128, 129, 130, 131, 132, 133, 134, 135, 136, 137, 138, 139, 140, 141, 142, 143, 144, 145, 146, 147, 148, 149, 150

were read on this motion to/for                    JUDGMENT - SUMMARY                    .

This is an action for personal injuries allegedly sustained by plaintiff Seon Villaruel on

November 29, 2019. At the time of the accident, plaintiff was employed as a bellman and was in

the elevator 1P8589 ("east elevator") located within The Lucerne Hotel, with four guests, their

luggage and a luggage cart. He alleges that as the elevator was ascending, it began to shake and

dropped suddenly, stopping on the 8th floor and injuring him. Plaintiff brought suit against

defendants, Grand America Associates LLC, The Lucerne Hotel, and Empire Hospitality Group,

LLC ("Hotel" or "Hotel defendants," collectively) as the property owner and manager. Plaintiff

also brought suit against Consolidated Elevator Service Corp. ("Consolidated"), the elevator

1

[* 1]

maintenance company. Plaintiff now moves, pursuant to CPLR 3212, for an order granting him summary judgment as to liability against all defendants. Hotel defendants cross-move pursuant to CPLR 3212 for summary judgment dismissing all claims and cross-claims against them pursuant to Worker's Compensation Law §§ 11 and 29. Hotel further argues that they are not liable because they contracted with Consolidated to regularly examine and perform routine preventative maintenance of the elevator.

## BACKGROUND

On November 29, 2019, plaintiff was injured at The Lucerne Hotel located at 201 W 79th St., New York, NY. Plaintiff was employed as a bellman and was in the east elevator which "jolted, dropped and came to a mis-leveled abrupt stop" causing him injuries (plaintiff's aff in support of motion for summary judgment, NYSCEF Doc No. 79 ¶ 3). The property was owned and managed by the defendants Grand America Associates LLC, The Lucerne Hotel and Empire Hospitality Group, LLC (amended complaint, NYSCEF Doc No. 33 ¶ 106; NYSCEF Doc No. 79 ¶ 3). The elevator was serviced and maintained by defendant Consolidated, pursuant to a "limited coverage" service contract executed on July 30, 1998 with The Lucerne Hotel (service contract, NYSCEF Doc No. 116).

Plaintiff testified that on the day of the accident, he had used the east elevator multiple times without incident before the accident occurred (plaintiff's deposition, NYSCEF Doc No. 94 at 35). However, a guest mentioned there was a problem with the elevator door closing, and one of his coworkers informed him that the elevator was stuck the day before (*id.* at 35-37). Plaintiff testified that the elevator maintenance company was at the hotel to complete repairs on the day of the accident, as well as the day before (*id.* at 39-40). He stated that the elevator had prior issues with stopping abruptly and he experienced it personally the week before the accident (id at

2

149-150). Guests would also complain to him that the elevator would stop between floors or move very slowly (*id.* at 150).

> Q. Mr. Villaruel, those times where you felt a hard stop, did you report these incidents to anyone?
>
> A. The times I felt the hard stop, yeah, I would tell my manager and he would said, well you know, the elevator guys is supposed to come check it out.
>
> Q. When those incidents happened, was the elevator put out of service, or did they still operate the elevator, or something else?
>
> A. When it -- when it happened -- when it happened with me, they didn't put the elevator out of the service. When it happened to me the times the customers complained, they didn't really put it out, until the elevator company came and take a look at it.

(*id.* at 153).

> ...
>
> Q. I'm sorry if you did testify to this. How many times prior did people get stuck inside the elevator before your accident?
>
> A. In that -- in that -- in the week, or like, in or the time -- like, in that week -- I don't know if you -- that week that the elevator was giving -- was giving a lot of problems that week and I know about three people that got stuck in that elevator in the last -- in that week.
>
> Q. Was it that week prior to your accident?
>
> A. No. Probably the same, the same week.

(*id.* at 155-156). As to the subject incident, plaintiff testified that immediately prior to his accident, he loaded luggage onto a cart and entered the elevator after four guests (*id.* at 47). Within a minute or two, after the east elevator began to ascend, it began to shake while producing a whining noise and then dropped suddenly (*id.* at 54-55). The incident was captured on a surveillance camera positioned inside the elevator. A guest inside the elevator contacted the fire department, which arrived 10 minutes later and extracted them (*id.* at 69).

Hotel defendants produced Ross Tucker, the Director of the Front Office at The Lucerne Hotel, for a deposition. Tucker states that Grand America is the corporate entity that owns, oversees, and does business as The Lucerne Hotel (Tucker deposition, NYSCEF Doc. 95 at 12).

3

[* 3]

Later in the deposition he stated that non-party 201 West 79th Street Realty Corp. does business as The Lucerne Hotel and Lucerne's employees were paid by 201 West 79th Street Realty Corp. (*id.* at 70-71). Tucker testified that the hotel had its own maintenance staff who were considered "engineers," but they never performed repairs to the elevator (*id.* at 18-19). The engineers and the hotel manager on duty had the ability to take an elevator out of service if needed (*id.* at 19-21). However, if there were any issues with the elevator, the hotel would call Consolidated and Consolidated would dispatch maintenance personnel (*id.* at 23-24) A ticket number would then be assigned to that call and provided to the manager on duty (*id.* at 25). However, the hotel itself kept no records of calls to Consolidated (*id.* at 24). Tucker testified that it was his understanding that Consolidated was responsible for all maintenance of the elevator (*id.* at 26). Consolidated would perform monthly service on the elevators and would provide 24-hour assistance for emergencies (*id.*). The elevators at The Lucerne Hotel were modernized prior to November 29, 2019 (*id.* at 30-31). The renovation consisted of replacing the motors and putting in new control boxes (*id.* at 32). The renovation was performed based upon a recommendation from Consolidated regarding the age of the old motors (*id.* at 34). Prior to the renovation, there were issues with the elevators getting stuck, but never "dropping" (*id.* at 35). The east elevator was stuck approximately twice in 2019 prior to November 29, 2019 (*id.* at 35-37).

Ross Tucker also executed an affidavit in opposition to plaintiff's summary judgment motion. Tucker affirms that between November 27, 2019 and November 28, 2019, The Lucerne Hotel informed Consolidated of issues with the east elevator three times (Tucker aff, NYSCEF Doc No. 115 ¶ 7). Each of those times, the elevator was inspected by Consolidated and upon the completion of the inspection and work of Consolidated, the elevator was brought back into service (*id.*). Between November 28, 2019 and November 29, 2019, Consolidated never notified The Lucerne Hotel that the subject elevator needed to be kept out of service (*id.* ¶ 8).

4

[* 4]

Kenneth Hickey, Consolidated's Service Manager, testified that the company had about twenty-five employees, including mechanics and helpers (Hickey deposition, NYSCEF Doc No. 97 at 9). Mechanics and helpers do not have to obtain any certification or licensing in New York State (*id.* at 11). Consolidated was contracted to perform work at The Lucerne Hotel, including inspections of the elevators once a month (*id.* at 19). Anytime a mechanic visited a property or did work at a property, Consolidated would produce a work ticket that would reflect what actions the mechanic took (*id.* at 31). However, if the hotel notified Consolidated about elevator issues apart from a regularly scheduled maintenance, a dispatch document would be issued (*id.* at 31-32).

Consolidated's, Managing Director, Sanford Gottesman, states the following:

> "while Mr. Carrajat opines that an elevator cab will not contact the elevator interlocks unless improperly maintained, that is simply contrary to common knowledge in the elevator industry. Elevator doors can become misaligned when struck or contacted by a person or object entering the elevator at any time, with no notice to an elevator company. As this building was a Hotel, the elevator doors at this building were constantly subject to being struck or contacted by passengers and Hotel employees going in and out of the elevator cabs with luggage and luggage carts that would impact the doors. That would cause a door alignment issue which could cause the door to contact an interlock with no relationship to the maintenance of the elevator. That can happen with no notice to the elevator company and there is no maintenance or pre-emptive repair that can prevent such an occurrence."

(Gottesman aff, NYSCEF Doc No. 113).

## ARGUMENTS

I.    Plaintiff's Summary Judgment Motion: Argument/Analysis

Plaintiff moves for summary judgment against all defendants based on negligence and the doctrine of res ipsa loquitur.

5

[* 5]

INDEX NO. 154180/2020

RECEIVED NYSCEF: 07/12/2024

A. Alleged Negligence of Consolidated

Plaintiff argues that Consolidated failed to maintain the subject elevator in proper working order, causing plaintiff's accident. He points to the work tickets dated September 25, 2019 and November 22, 2019, two months and one week before the accident, respectively, where the elevator's interlock system was in need of repair. Moreover, there were work tickets related to a worn guide that caused repeated noises from the subject elevator. Plaintiff contends that based on the evidence, and the expert affidavit of Patrick Carrajat, Consolidated was on notice of the defective condition of the elevator for at least two months prior to plaintiff's accident.

In opposition, defendant Consolidated asserts that the incident could have occurred absent Consolidated's negligence. In support of its position, Consolidated proffers the competing affidavit of Jon Halpern. Halpern opines that the elevator's free-fall, as described by plaintiff, is mechanically impossible. Halpern also states that if in fact there was a problem with an interlock, the broken interlock would cause the safety circuit to open up and the elevator would not move at all. Halpern's affidavit explains a number of conditions that could cause the elevator to come to a stop as it did in plaintiff's case, most of which have non-negligent explanations. Consolidated also cites to Gottesman's affidavit.

In reply, plaintiff argues that Gottesman "does nothing more than speculate as to causation, while Mr. Halpern has failed to set forth his opinion as to what caused the accident" (NYSCEF Doc No. 140 ¶ 7). Thus, plaintiff contends that Consolidated has failed to raise any issues of fact and Halpern and Gottesman's affidavits should be disregarded by the court.

B. Negligence as to Hotel

Hotel correctly notes that plaintiff's motion for summary judgment presents no arguments or evidence as against Hotel defendants. However, they submit, in opposition, the

6

affidavit of William J. Meyer and the contract between defendant The Lucerne Hotel and Consolidated as evidence that they are free from negligence. Meyer, an elevator expert, states in his affidavit that Hotel defendants maintained the elevator system in a manner that was "appropriate and consistent with industry norm, through a contractual agreement with an elevator maintenance company for preventative maintenance and call back service" (Meyer aff, NYSCEF Doc No. 120 ¶ 8). Hotel denies having any control over the subject elevator and did not have notice of any defects or issues regarding same.

C. Res Ipsa Loquitor

Hotel also argues that res ipsa loquitor is inapplicable because "Lucerne transferred full responsibility for maintenance of Hotel's elevators to Consolidated" and therefore, the elevator was in the exclusive control of Consolidated.

II.     Hotel Defendants' Cross-Motion for Summary Judgment

Hotel defendants cross-move for summary judgment on the grounds that (1) pursuant to Workers Compensation Law § 29, all of plaintiff's claims against Grand America and Lucerne are barred; (2) pursuant to Worker's Compensation Law § 11, all cross-claims by Consolidated for contribution and indemnification as to Grand America and Lucerne are barred; and (3) Hotel defendants were not negligent and bear no liability for plaintiff's accident.

Plaintiff testified at his deposition that his employer at the time of his accident was 201 W. 79th St. (NYSCEF Doc No. 94 at 27) and submits workers' compensation paperwork that lists 201 W. 79th St. Realty Corp. as his employer, not Hotel defendants (workers' compensation employee claim form, NYSCEF Doc No. at 148).

7

Consolidated, in opposition, argues that there is a nondelegable duty upon a property owner to maintain their premises in a safe condition. Moreover, the contract between The Lucerne Hotel and Consolidated is not a full-service contract as alluded to by Hotel, but a "limited-service contract" that does not relieve Hotel from responsibility for the elevator. In fact, Consolidated argues that if the stoppage of the elevator was due to an interlock issue as opined by plaintiff's expert, Carrajat, and the Hotel's expert, Meyer, caused by individuals making contact with the elevator doors, Hotel should have been monitoring and advising Consolidated to place the elevator out of service per the contract.

## DISCUSSION

The "proponent of a summary judgment motion must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to demonstrate the absence of any material issues of fact" (*Alvarez v Prospect Hosp.*, 68 NY2d 320, 324 [1986]). "Failure to make such showing requires a denial of the motion, regardless of the sufficiency of the opposing papers" (*Winegrad v New York Univ. Med. Center*, 64 NY2d 851, 853 [1985]). "Once this showing has been made, however, the burden shifts to the party opposing the motion for summary judgment to produce evidentiary proof in admissible form sufficient to establish the existence of material issues of fact which require a trial of the action" (*Alvarez*, 68 NY2d at 324, *citing Zuckerman v City of New York*, 49 NY2d 557, 562 [1980]). Generally, negligence cases do not lend themselves to resolution by a motion for summary judgment unless the facts clearly demonstrate the negligence of one party without any culpable conduct by the other (*Barnes v Lee*, 158 AD2d 414, 414 [1st Dept 1990]). "A motion for summary judgment should not be granted where the facts are in dispute, where conflicting inferences may be drawn from the

8

[* 8]

evidence, or where there are issues of credibility" (*Ruiz v Griffin*, 71 AD3d 1112, 1115 [2d Dept 2010] [internal quotation marks and citation omitted]).

I. Plaintiff's Summary Judgment Motion: Rulings

A. As to Consolidated

Plaintiff's motion on the issue of liability against defendant Consolidated is denied on the ground that there are issues of fact as to whether Consolidated is liable for plaintiff's injuries. It is well-settled that "[a]n elevator company that agrees to maintain an elevator may be liable to a passenger for failure to correct conditions of which it has knowledge or failure to use reasonable care to discover and correct a condition which it ought to have found" *(McLaughlin v Thyssen Dover Elevator Co.*, 117 AD3d 511, 511 [1st Dept 2014], citing *Rogers v Dorchester Assoc*, 32 NY2d 553, 559 [1973]).

There remain genuine issues of fact as to whether Consolidated failed to correct the condition of the east elevator or failed to use reasonable care to discover and correct the condition. The conflicting expert affidavits offer opposing theories as to whether Consolidated adequately maintained and/or repaired the east elevator. Specifically, Patrick Carrajat, plaintiff's expert, affirms that "the only probable cause" of the "violent abrupt stop" of the elevator between the 6th and 7th floor is

> "caused by a part of the elevator cab striking a door release assembly causing a momentary opening of the safety circuit and removing power from the elevator. This happens when the interlock keeper contact is moved due to being struck by the cab or part thereof, causing an abrupt stop. Striking a release assembly is known in the trade as 'clipping a lock' and that is the only explanation for this accident."

(Carrajat aff, NYSCEF Doc No. 101 at 4).

9

[* 9]

Carrajat further states that Consolidated's records reveal prior issues with the interlock system on the 9th floor based upon a work ticket dated September 25, 2019 that has no corresponding repair ticket. On November 22, 2019, seven days before the alleged accident, there was also a work ticket issued that "relates directly to a problem with the 2nd floor interlock" (*id*. at 5). "In addition, while the elevator experienced repeated problems with noises emanating from a worn car guide, there is no record of this being repaired or replaced prior to the day of the accident" (*id*.). Carrajat affirms, "to a reasonable degree of mechanical certainty that an elevator does not strike an interlock release and stop abruptly unless negligently maintained" (*id*. at 7) and that Consolidated failed to take appropriate steps to investigate or correct the problem of the elevator cab striking interlock release assemblies.

Conversely, Consolidated's expert, Jon B. Halpern, opines that a sudden stop such as one plaintiff experienced, can have many causes, one of which is the clipping of an interlock.

> "A sudden stop can also be caused by a mechanical problem with a machine or a sheave, and electrical power problem, a controller problem, a problem with a relay or a switch. None of these devices are seen in the [surveillance] video and a number of them can occur without any negligence of the elevator maintainer"

(Halpern aff, NYSCEF Doc No. 111 ¶ 9a). In regard to the work tickets, Halpern states that the September 25, 2019 ticket was for a noise complaint and does not reference any interlock issues. The November 22, 2019 work ticket, where the east elevator was found stuck on the 2nd floor, would not cause an interlock issue at the 6th or 7th floor, where plaintiff's alleged accident occurred. If the sudden stop of the elevator on the date of accident was caused by a clipped interlock, Halpern opines that it could have been "caused by porters moving luggage within a hotel on luggage carts making contact with elevator doors disrupting the adjustment" and not due to any failure to maintain the elevator (*id*. ¶ 9i).

Finally, Hotel submits the expert affidavit of William J. Meyer, who opines that

10

"There are no records that would provide sufficient information to determine precisely what caused the subject 11/29/19 incident. ... [T]he 'hardstop' was most likely related to an inadvertent motor shut down and brake application or rope gripper application, which could be related to hoistway door interlocks and/or the hoist machine brake switch, which components had been mentioned in prior work tickets. Said components are not within the purview of The Hotel maintenance staff"

(Meyer aff, NYSCEF Doc No. 120 ¶ 10).

For all of the foregoing reasons, the Court finds that there clearly remain issues of fact precluding summary judgment against Consolidated at this time, and motion #003 seeking summary judgment is denied, as is defendant's cross-motion as it relates to Consolidated's liability.

2. As to Hotel

As to Hotel defendants' liability, plaintiff has failed to establish his prima facie case as to each Hotel defendant by failing to put forth evidence in admissible form that shows that each Hotel defendant was negligent and owed him a duty of care. As to plaintiff's arguments made for the first time in his reply papers, they are "entitled to no consideration by a court entertaining a summary judgment motion" (*Rhodes v City of New York*, 931 NYS2d 595, 597 [1st Dept 2011]).

Notwithstanding the above,

"A property owner has a nondelegable duty to passengers to maintain its building's elevator in a reasonably safe manner and may be liable for elevator malfunctions or defects causing injury to a plaintiff about which it has constructive or actual notice, or where, despite having an exclusive maintenance and repair contract with an elevator company, it fails to notify the elevator company about a known defect"

(*Isaac v 1515 Macombs, LLC*, 84 AD3d 457, 458 [1st Dept 2011] [internal citations omitted] *lv denied* 17 NY3d 708 [2011]). The property owner's duty to maintain the elevator applies despite any contractual delegation of maintenance obligations to an elevator maintenance company such as Consolidated (*see Mas v Two Bridges Assocs.*, 75 NY2d 680, 688 [1990]; *Camaj v East 52nd*

11

*Partners*, 215 AD2d 150, 151 [1st Dept 1995]). Here, it is undisputed that the owner of the property is Grand America (statement of material facts, NYSCEF Doc No. 125 ¶ 3), as such, it has a common-law duty to keep the premises in a reasonably safe condition, which duty extends to elevators on its premises (*see Isaac v 1515 Macombs, LLC*, 84 AD3d at 458). It is also undisputed that the premises is a hotel, which is a multiple dwelling under Multiple Dwelling Law § 4 (9). Thus, Grand America has a nondelegable duty to maintain and repair elevators on its premises under Multiple Dwelling Law § 78 (*see Mas v Two Bridges Assocs.*, 75 NY2d at 687-688; *Rogers v Dorchester Assoc.*, 32 NY2d at 563).

Having made no arguments against the other Hotel defendants as to liability, plaintiff has failed to establish its prima facie claim of negligence as to The Lucerne Hotel and Empire Hospitality Group LLC and questions of fact remain as to the remaining Hotel defendants' role in their ownership, maintenance and/or repair of the property, if any.

Accordingly, plaintiff's motion for summary judgment as to liability is granted only as to Grand America and is otherwise denied.

C. Res Ipsa Loquitor

The Court now turns to the applicability of res ipsa loquitor, which "allows the factfinder to infer negligence from the mere happening of an event where the plaintiff presents evidence (1) that the occurrence would not ordinarily occur in the absence of negligence, (2) that the injury was caused by an ... instrumentality within the exclusive control of defendant, and (3) that no act or negligence on the plaintiff's part contributed to the happening of the event" (*Miller v Schindler El. Corp.*, 308 AD2d 312, 313 [1st Dept 2003]).

12

Once plaintiff satisfies the burden of proof on these three elements, the res ipsa loquiter doctrine "has the effect of creating a prima facie case of negligence sufficient for submission to the jury" and permits the jury to infer negligence from the mere fact of the occurrence (*see Dermatossian v New York City Tr. Auth.*, 67 NY2d 219, 226 [1986]). Notice of the defect is inferred and the plaintiff need not offer evidence of actual or constructive notice in order to proceed (*see Ezzard v One E. Riv. Place Realty Co., LLC*, 129 AD3d 159, 162 [1st Dept 2015]; *Gurevich v Queens Parke Realty Corp.*, 12 AD3d 566, 567 [2d Dept 2004]; *Ardolaj v Two Broadway Land Co.*, 276 AD2d 264 [1st Dept 2000]).

Here, as the cause of the abrupt and unanticipated stopping of the elevator is unknown and the parties propose differing theories as to the cause of the occurrence, there is an issue of fact as to whether the occurrence would have taken place but for defendants' negligence (*see Dzidowska v The Related Companies, LP,* 2016 NY Slip Op 30048[U] , at *5 [Sup Ct, NY County 2016], *affd* 148 AD3d 480 [1st Dept 2017]). With that being said, the doctrine of *res ipsa loquitur* may not be discounted at this stage of the litigation. Res ipsa loquitur could apply to occurrences where, as here, the actual specific cause of an accident is unknown (*see James v Wormuth*, 21 NY3d 540, 546 [2013] [the element of exclusive control was not satisfied because plaintiff failed to show sufficient proof that "eliminate[s] within reason all explanations for the injury other than the defendant's negligence"], quoting *Dermatossian v New York City Tr. Auth*, 67 NY2d 219, 227 [1986]).

Accordingly, plaintiff's motion to apply the doctrine of res ipsa loquitor to grant summary is denied.

13

[* 13]

II. Hotel Defendants' Cross-Motion for Summary Judgment

Defendants Grand America and The Lucerne Hotel argue that plaintiff, as its employee, cannot sue his employer for negligence if he has applied for and obtained workers' compensation benefits.

Pursuant to Workers' Compensation Law §§ 11 and 29 (6), an employee who is entitled to receive workers' compensation benefits may not sue his or her employer or co-employee based on the injuries sustained (*see* Workers' Compensation Law §§ 11, 29[6]). For purposes of the Workers' Compensation Law, a person may be deemed to have more than one employer- a general employer and a special employer (*see Munion v Trustees of Columbia Univ. in City of N.Y.*, 120 AD3d 779, 779 [2d Dept 2014]). "The receipt of Workers' Compensation benefits from a general employer precludes an employee from commencing a negligence action against a special employer" (*Pena v Automatic Data Processing, Inc.*, 105 AD3d 924, 924 [2d Dept 2013]). "A special employee is described as one who is transferred for a limited time of whatever duration to the service of another. General employment is presumed to continue, but this presumption is overcome upon clear demonstration of surrender of control by the general employer and assumption of control by the special employer" (*Thompson v Grumman Aerospace Corp.*, 78 NY2d 553, 557 [1991] [citations omitted]).

A key factor in determining whether a special employment relationship exists is "who controls and directs the manner, details and ultimate result of the employee's work" (*id.* at 558). Although "a person's categorization as a special employee is usually a question of fact," the determination may be made as a matter of law "where the particular, undisputed critical facts compel that conclusion and present no triable issue of fact" (*id.* at 557-558).

14

Hotel defendants present plaintiff's Workers' Compensation C-3 form, which lists plaintiff's employer as "Lucerne Hotel," as well as the deposition of Ross Tucker, who stated that both Grand America and 201 W 79th Street Realty Corp. do business as The Lucerne Hotel. They also attach a Hotel and Property Agreement between Empire Hospitality Group LLC and 201 W 79th Street Realty Corp. pursuant to which 201 W 79th Street Realty Corp. operates The Lucerne Hotel.

Plaintiff, in opposition, points to the Workers' Compensation Board Notice of Case Assembly, which notifies the claimant, claimant's employer and the workers' compensation insurance carrier for the employer that a case has been created (Workers' Compensation Case Assembly, NYSCEF Doc No. 122), and in which the employer is listed as 201 West 79th Street Realty Corp.

While plaintiff avers that 201 West 79th Street Realty Corp. was deemed his employer by the Workers' Compensation Board, this designation is not dispositive of whether plaintiff was a special employee for another entity (*Gomez v Penmark Realty Corp.*, 50 AD3d 607, 608 [1st Dept 2008]). "A general employee of one employer may also be in the special employ of another, notwithstanding the general employer's responsibility for payment of wages and for maintaining workers' compensation and other employee benefits" (*Thompson v Grumman Aerospace Corp.*, 78 NY2d at 557).

Questions remain however, as to whether Grand America and The Lucerne Hotel have made a sufficient prima facie showing that the claims against them are barred by workers' compensation. Moving defendants bear the burden of establishing the defense of worker's compensation by a preponderance of evidence (*see Donatin v Sea Crest Trading Co.*, 181 AD2d 654, 655 [2d Dept 1992]). Here, Hotel defendants rely almost solely on the scant testimony of

15

[* 15]

INDEX NO. 154180/2020
RECEIVED NYSCEF: 07/12/2024

Ross Tucker. There is no mention of Grand America in any of the exhibits Hotel defendants attach to its papers, nor is there any supporting evidence attached to Ross Tucker's affidavit executed in support of this cross-motion. Nowhere is it demonstrated, through documents, explanation of functions or responsibilities, that Grand America is plaintiff's employer. Moreover, as to The Lucerne Hotel, defendants provide little evidentiary support that The Lucerne Hotel is plaintiff's employer or special employer. Nor do defendants explain how the Hotel defendants operate or function as one company, employing plaintiff. Even if moving defendants had met their burden, plaintiff's opposition poses a question of fact as to 201 West 79th Street Realty Corp. and its role in employing plaintiff.

Accordingly, the Hotel defendant's cross-motion pursuant to Workers' Compensation Law §§ 11 and 29 (6) is denied.

## CONCLUSION

Accordingly, it is hereby

ORDERED that the motion (sequence number 003) of plaintiff Seon Villaruel for summary judgment is granted only as to liability against Grand America and is otherwise denied;

ORDERED that the cross-motion of Grand America Associates LLC, The Lucerne Hotel, and Empire Hospitality Group, LLC is denied.

This constitutes the decision and order of the court.

**7/12/2024**

_____
DATE

HON. LESLIE A. STROTH
J.S.C.

| CHECK ONE: | | CASE DISPOSED | | X | NON-FINAL DISPOSITION | | |
|---|---|---|---|---|---|---|---|
| | | GRANTED | DENIED | | GRANTED IN PART | X | OTHER |
| APPLICATION: | | SETTLE ORDER | | | SUBMIT ORDER | | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | FIDUCIARY APPOINTMENT | | REFERENCE |

16

[* 16]